550 So.2d 249 (1989)
STATE of Louisiana
v.
Bobby J. HOLMES.
No. 88-KA-0079.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
Writ Denied January 12, 1990.
*250 Harry F. Connick, Dist. Atty., Charles L. Collins, Asst. Dist. Atty., New Orleans, for plaintiff.
Randall A. Fish, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant.
Before CIACCIO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Bobby Holmes, was indicted and tried for second degree murder, a violation of La.R.S. 14:30.1. Following a trial by jury he was found guilty as charged and sentenced to serve life at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals, raising one assignment of error.
Defendant was found guilty of the murder of Harold Juluke. Juluke was shot three times at close range on the night of March 18, 1987. Defendant was subsequently identified as the perpetrator and arrested. At trial he was identified as the murderer by two eyewitnesses, including a sixteen-year-old girl, Tammy Dolliole.
Ms. Dolliole testified that on the evening of the murder she was in a local gameroom when she heard a shot. She and a number of other patrons left the establishment to see what was happening outside. She ran to a streetcorner located a block away, and observed the victim running from the defendant, who was chasing him. Ms. Dolliole said she saw the defendant shoot Juluke as he was running. Juluke appeared to weaken, and fell to the ground. He attempted to get up, but the defendant placed his foot on him and shot him. Ms. Dolliole testified that she turned and hurried away, back towards the gameroom. The defendant returned to his car near the bar and walked past her as he did.
Ms. Dolliole later approached a police officer who was leaving the scene of the murder investigation. She told him what she had seen and described the perpetrator, but didn't know his name. For some reason Ms. Dolliole was never asked to participate in any sort of identification procedure, such as a physical or photographic lineup. However, another witness, James Scott, was located, and he positively identified the defendant in a photographic lineup as the murderer.
The defense filed a motion to suppress Scott's identification. Ms. Dolliole, listed as a witness in court records, was subpoened to appear at the motion to suppress hearing. As she sat in the rear of the courtroom by herself, she recognized the defendant as the person whom she saw shoot Juluke. After the hearing was continued, Ms. Dolliole approached the Assistant District Attorney who was handling the case, and completely unsolicited, informed him that the defendant was the person she saw shoot the victim.
The defense was unaware of this informal identification until Ms. Dolliole testified at trial. Counsel for defendant immediately moved for a mistrial, claiming that Ms. Dolliole's identification should be the subject of a motion to suppress hearing. The trial judge removed the jury and heard argument from counsel and further questioning of Ms. Dolliole, before denying defendant's motion.
Defendant's sole assignment of error is that the trial court erred in denying his motion for a mistrial. Defendant's argument goes to the suggestiveness and unreliability of the identification, rather than the correctness of the trial court's action in *251 failing to grant a mistrial so that a motion to suppress hearing could be held on the identification. That is, defendant frames the issue as substantive, not procedural. This is correct. After the jury was removed the trial judge heard evidence regarding the suggestiveness of the informal identification by Ms. Dolliole. In denying defendant's motion for a mistrial, the trial judge effectively ruled that the identification was not suggestive, and therefore, was not tainted so as to deny defendant his right to due process. We will treat this appeal as one from a trial court's denial of a motion to suppress an identification.
A defendant seeking to suppress an identification must prove that (1) the identification itself was suggestive, and (2) that there was a likelihood of a misidentification as a result of the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Guillot, 526 So.2d 352 (La.App. 4th Cir. 1988).
In the instant case there is no evidence that Ms. Dolliole was subpoenaed to come to court in hopes that she would see the defendant in the courtroom, and identify him as the murderer. This was not an arranged identification procedure, but an inadvertent meeting between the witness and the defendant. An immediate and definite identification resulting from an inadvertent meeting between a witness and a suspect will be found reliable and admissible where there is no indication of impropriety or suggestiveness. State v. Gabriel, 450 So.2d 611 (La.1984); State v. Guillot, supra.
Ms. Dolliole testified that when she received the subpoena she knew that it related to the murder. Because the name Bobby Holmes was on the subpoena, she admitted that she thought this person must have been arrested for the crime. She said she recognized the defendant in the courtroom before his case was called. There is no evidence that Holmes was the only defendant in the courtroom, or even that he stood before the bench; the hearing scheduled for that day was continued because a police officer was not present. Arguably, the identification may be considered somewhat suggestive simply because Ms. Dolliole was aware that she was in court because of the murder, and her attention could have been directed to persons seated in the front of the courtroom.
Even if an identification is suggestive, it may be admitted as evidence if five indicia of reliability demonstrate that the identification is accurate. State v. Hill, 458 So.2d 521 (La.App. 4th Cir.1984). These indicia are: (1) the opportunity of the witness to view the defendant at the time of the crime, (2) the degree of attention paid by the witness at the time the crime was committed, (3) the accuracy of the description given by the witness, (4) the level of certainty exhibited by the witness at the time of the identification, and (5) the length of time between the crime and the identification. Manson v. Brathwaite, supra; State v. Prudholm, supra; State v. Guillot, supra.
Ms. Dolliole observed the defendant chasing the victim. She saw the victim fall, and the defendant stand over him and shoot him. The defendant passed by her and said goodnight as he walked back to his automobile. Although Ms. Dolliole did not testify as to the lighting conditions, James Scott, another eyewitness, testified that the scene was well lit. It appears that Ms. Dolliole had a very good opportunity to view the crime.
It also appears that Ms. Dolliole's full attention was focused on the crime taking place before her. She followed the victim and the defendant down the street to see the murder. After the victim fell she saw him raise his head up before he was shot. She said the defendant was smiling as he walked away. Her recollection of these details is somewhat indicative of her attentiveness, even though she did not mention other details related by Mr. Scott.
On the witness stand Ms. Dolliole described the clothing worn that night by the murderer. She said he wore gray bell bottom trousers with a white short-sleeve shirt, and black shoes. This was the description *252 she said she gave to the police officer that night. In contrast, Mr. Scott testified that the defendant was wearing dark clothing. Defendant cites this discrepancy as evidence that the testimony of one of the eyewitnesses is unreliable. This is possible, at least as to the clothing description. But which witness is correct and which is incorrect? There is no way of knowing because the defendant was not arrested that night and it is not known what clothing he was wearing.
Ms. Dolliole did not say much about the physical characteristics of the perpetrator, except that he had a moustache. There was no other evidence presented as to the actual description given to police by Ms. Dolliole. The photograph of the defendant picked out by Mr. Scott shows the defendant with a moustache. This "mug shot" was taken on June 18, 1986, nine months before the murder. It is not known whether the defendant had a moustache at the time of the murder. Based upon this evidence we are unable to determine the accuracy of Ms. Dolliole's prior description. However, her description of the clothing worn by the victim matched the one given by Mr. Scott. Their description of the jacket worn by the victim was corroborated by the testimony of a homicide detective.
Defendant argues that the age of Ms. Dolliole, sixteen, should be considered as weighing against the reliability of her identification. Ms. Dolliole testified that she attends a vocational school. We find no evidence that the age of this witness lessens the likelihood that her identification was reliable.
Ms. Dolliole testified that she recognized the defendant in the courtroom as soon as she saw him look back at her. After the matter was continued she informed the Assistant District Attorney that she recognized the defendant as the person who shot Harold Juluke. The crime occurred on March 18, 1987. The identification was made on June 29, 1987, approximately three and a half months later.
Reliability is the "linchpin" in determining the admissibility of identification testimony. Manson v. Brathwaite, supra. Considering that Ms. Dolliole's identification was only arguably suggestive, the indicators of her ability to make an accurate identification "are hardly outweighed by the corrupting effect of the challenged identification itself". See Manson v. Brathwaite, supra.
After viewing all of the circumstances of this case, we are unable to say that there was a "substantial risk of misidentification" of the defendant by Ms. Dolliole. See State v. Bickham, 404 So.2d 929 (La.1981). The trial court properly allowed Ms. Dolliole to testify concerning her prior identification of the defendant.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.