570 So.2d 533 (1990)
STATE of Louisiana
v.
Alvin J. VALENTINE.
No. 88-KA-1361.
Court of Appeal of Louisiana, Fourth Circuit.
November 15, 1990.
*534 Harry F. Connick, Dist. Atty., Michele Smith, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State.
Stanton E. Shuler, Jr., Leake & Anderson, New Orleans, for defendant-appellant Alvin J. Valentine.
Before SCHOTT, C.J., and KLEES and PLOTKIN, JJ.
KLEES, Judge.
On June 10, 1987, the appellant Alvin J. Valentine was charged with armed robbery. On August 6th, a twelve-member jury found him guilty as charged. He waived all delays and was sentenced to serve twenty-two years at hard labor without benefit of parole, probation, or suspension of sentence. From this conviction and sentence this appeal follows.
Appellant asserts that:
1. The trial court erred in denying his motion to suppress identification.
2. The trial court erred in failing to supply the transcript of the preliminary hearing.
3. The state failed to prove beyond a reasonable doubt that appellant was the perpetrator of the crime.
4. The trial court failed to supply the transcript of the trial court's jury instructions, thereby depriving appellant of his right to an effectual appeal.

FACTS:
At approximately 3:30 a.m. on May 13, 1987, Cassandra Mitchell and Edward Seymour were working at the Toddle House restaurant on General DeGaulle Boulevard. Suddenly, a man entered the restaurant *535 wearing a ski mask, blue warm-up pants or jumpsuit, a red shirt with the word "Maze" written on it, and a mesh shirt over the red shirt. Ms. Mitchell screamed for Seymour, and when he emerged from the back of the restaurant he saw the man holding a knife to Ms. Mitchell's neck. The man threatened to kill Ms. Mitchell if Seymour came closer, and Seymour told the man not to hurt her, but to take the money instead. Ms. Mitchell opened the register, and the man took the money and fled. Seymour ran out the door after the man, ran to the gas station next door, and told the worker there to call the police.
Seymour testified that no more than fifteen minutes prior to the robbery, he saw a man wearing warm-up pants, a Cango hat, and a red shirt with "Maze" and a picture of Frankie Beverly on it. The man's hair was in braids, and he was carrying a duffle bag. He also testified that the man who robbed the restaurant had braids in his hair which he could see sticking up in the ski mask. Seymour estimated $70.00 was taken from the cash register.
Trooper Willumitis, who was patrolling the Westbank, heard the broadcast of the robbery and a description of the perpetrator. Because he was near the area, he drove into a subdivision located behind the restaurant and observed the defendant Alvin Valentine standing between two school buildings approximately two blocks from the restaurant. Valentine was wearing jean shorts and a red shirt with "Maze" and a picture of Frankie Beverly on it. Valentine was breathing heavily and was sweating profusely. The trooper detained Valentine until N.O.P.D. officers arrived, and then Valentine was transported to the restaurant. There, while seated in the police car, he was viewed separately by Ms. Mitchell and Seymour, who both identified him as the robber. Officers searching the area found a Cango hat and a duffle bag with $62.00 approximately one block away from the restaurant.
Alvin Valentine denied robbing the restaurant. He testified he was walking from his house to a friend's house when two officers stopped him, asked him many questions, and then allowed him to leave. He testified he continued walking and was then stopped by the trooper, who detained him for N.O.P.D. He testified he was then taken to the restaurant where he was viewed by one man. He estimated he was detained at the restaurant for at least one and one half hours until he was told of the robbery. He explained that he had become sweaty from wrestling with his friend Eric before he left home, which was at least twenty-five minutes before the first officers stopped him. He also testified that his wife was present when he called his friend and told the friend he was going to visit him. However, none of these witnesses were presented at trial. He denied wearing any other clothes except those he wore at the time of his arrest. He admitted having a prior conviction for carrying a concealed weapon.
In rebuttal, Officer Bonura testified that she and her partner stopped Valentine at 3:22 a.m. on Gen. DeGaulle approximately one half of a mile from the restaurant. At that time, he was wearing a blue jumpsuit with a red shirt underneath the jumpsuit.

I.
By his first assignment of error, the appellant contends the trial court erred by denying his motion to suppress the identification. Specifically, he argues the procedure used when Ms. Mitchell and Seymour identified him was unduly suggestive.
When reviewing an out-of-court identification procedure for its constitutionality and hence its admissibility in court, the appellate court must first make a determination of whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Amos, 550 So.2d 272 (La.App. 4th Cir. 1989); State v. Holmes, 550 So.2d 249 (La. App. 4th Cir.1989), writ den. 556 So.2d 56 (La.1990); State v. Lee, 545 So.2d 1163 (La.App. 4th Cir.1989). If the court finds in the affirmative, the court must then decide, under all the circumstances, if the *536 suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Manson, supra; Prudholm, supra; State v. Guillot, 526 So.2d 352 (La. App. 4th Cir.1988), writs den. 531 So.2d 471 (La.1988). In Manson, the Court set forth a five-factor test to determine whether the identification was reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.[1]
Generally, one-on-one identifications are not favored, but they may be justified under certain circumstances. State v. Bickham, 404 So.2d 929 (La.1981); Amos, supra. However, in cases where such identifications were upheld, the identifications occurred within a short time after the crime occurred, and either occurred at or near the scene of the crime or occurred as an inadvertent meeting between the witness and the defendant.[2] In Bickham, the suspect was immediately apprehended and returned to the scene of the crime where the victim identified him as the assailant. The Court found that under these circumstances, there was no substantial risk of misidentification.
In Amos, the two defendants were arrested after a chase and were taken back to the scene of the robbery approximately thirty minutes after it occurred. While the victim stayed inside the store, the officers took each defendant separately from the car and had them stand outside the store to have her view them. She positively identified each defendant. This court upheld the identifications.[3]
In Guillot, the victim and a witness identified the defendants as they were being led back to a police car which was parked in front of the bar where the crime occurred. The identifications occurred within two hours of the crime, and each identification was spontaneous. This court upheld the admissibility of these identifications. In State v. Brown, 519 So.2d 826 (La.App. 4th Cir.1988), the victims coincidentally viewed the defendant as he was being led into the police station where they had gone to report the robbery. The identifications occurred within twenty-five minutes of the robbery. These identifications were upheld by this court.
In State v. Loyd, 425 So.2d 710 (La.1982), the mother of the kidnapped and murdered victim was asked to come to police headquarters to view the defendant to see if he resembled the assailant. She entered the police station and observed through an open door the defendant sitting in the officers' lounge. No one called her attention to the defendant, but she immediately identified him as the assailant. The Court found this identification to be reliable and therefore admissible.
Here, at the suppression hearing an officer testified that the description given by Ms. Mitchell and Seymour of the robber was a black male wearing a blue jumpsuit over a red T-shirt with the word "Maze" in black letters and with a picture of Frankie Beverly. The appellant was apprehended approximately one and a half blocks from the restaurant within half an hour of the robbery. He was out of breath and sweaty, and he was wearing jean shorts and a red Maze/Beverly T-shirt. The appellant *537 was driven back to the restaurant, and he was viewed by both Ms. Mitchell and Seymour as he sat handcuffed in the back of the police car. At the hearing, Ms. Mitchell testified she identified him mainly because of the red T-shirt since she had not seen his face due to the ski mask he wore during the robbery. However, Seymour testified that he had seen the appellant passing the restaurant just prior to the robbery, dressed in warm-up pants and a black see-through shirt worn over the red Maze/Beverly T-shirt. He also testified the robber had braids which he could see under the ski mask (the appellant had braids at the time of his arrest), and the robber's eyes were the same as the appellant's eyes.
These witnesses' testimony at trial was very similar to that at the suppression hearing. In addition, at trial the same officer testified Ms. Mitchell and Seymour separately went outside to view the appellant. Ms. Mitchell estimated the police returned to the restaurant with the appellant approximately ten minutes after the robbery. Seymour testified that when he saw the appellant outside the restaurant prior to the robbery, he was wearing a Cango hat in addition to the clothes he described at the hearing. He also testified it looked like the appellant was wearing other clothes under the warm-up pants. He estimated thirty-five to forty minutes elapsed between the robbery and the return of the appellant in the back of the police car.
Based upon this testimony, it does not appear the trial court erred by denying the motion to suppress the identification. The appellant was apprehended near the scene of the robbery and taken back to the scene within thirty minutes to an hour of the robbery. Ms. Mitchell and Seymour separately went to the car to view the appellant. Although Ms. Mitchell's identification was based mainly upon the distinctive shirt the appellant and the robber wore, Seymour saw the appellant outside the restaurant just prior to the robbery dressed in the same manner as the robber.
In support of his claim of the unreliability of the identifications, the appellant notes that the robber wore a ski mask and gloves, concealing his identity. However, Seymour saw the appellant just prior to the robbery, dressed as the robber was dressed, and he testified that he could see braids sticking up under the ski mask. The appellant next notes that Ms. Mitchell was really unable to get a good look at him because during most of the robbery the robber held her from behind with a knife to her neck. However, Ms. Mitchell admitted she was basing her identification upon the red Maze/Beverly T-shirt he and the robber were wearing. In addition, although he held her from behind, she was able to see the shirt with the distinctive writing on it when the robber entered the restaurant. He notes he was not wearing the same clothes at his apprehension that the robber was wearing, and the extra clothes, the knife, the ski mask, and the gloves used by the robber were never found. However, Seymour saw him just prior to the robbery wearing virtually the same clothes as the robber.
The appellant contends the identifications of Ms. Mitchell and Seymour were tainted because they were present when the officer who stayed with them was contacted via radio that a suspect had been apprehended. He argues that this predisposed the witnesses to identify him as the robber. However, the officer testified that he was standing with Ms. Mitchell and Seymour when he received the call that a suspect was being brought to them. The officer testified that he told them: "We have someone we want you to see, to see if this is, in fact, the person who robbed you." This language, rather than suggesting that the suspect was the robber, seems more to point up to the witnesses that the suspect might not be the perpetrator. Indeed, by the very nature of a one-on-one identification occurring soon after a crime, there is a possibility that the suspect could be the perpetrator. The advisement by the officer that the suspect might not be the perpetrator would therefore tend to balance this potential bias.
The appellant also points to the fact that he was forced to remain handcuffed *538 while seated in the back of the police car when he was viewed by the witnesses and the fact that the lighting in the parking lot was bad. However, although the officer testified the lighting was bad, he also testified there was "a lot of lighting around." In addition, as noted in the State's brief, the fact that the defendant was handcuffed and in police custody when he was identified does not render the identification unreliable. See State v. Robinson, 404 So.2d 907 (La.1981). Based upon the testimony of the officer and the witnesses both at the suppression hearing and at trial, it does not appear the trial court erred by denying the motion to suppress the identification. This assignment is without merit.

II.
By his second assignment, the appellant contends his right to a meaningful appeal was denied because he was not allowed to obtain a copy of the transcript of the hearing on the motion to suppress the identification. When he filed his original motion to supplement the record, he asked for the transcript of the preliminary hearing, which happened to have been held at the same time as the suppression hearing. Because errors in the preliminary hearing are rendered moot by a subsequent trial and conviction,[4] this request was denied. At no time did the appellant indicate he wanted this transcript for a review of the denial of his motion to suppress the identification. It was not until his original brief was filed that he alleged he needed the transcript to attack the denial of his suppression motion. At that point, this transcript was obtained, the appellant's counsel was notified of the supplementation, and he was given additional time to file a supplemental brief. After viewing this transcript, the appellant then filed a supplemental brief. Thus, this assignment is moot.

III.
By his third assignment, the appellant contends there was insufficient evidence to support his conviction. Specifically, he argues the evidence did not show beyond a reasonable doubt that he was the perpetrator.
In its evaluation of the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987); State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990) writ denied, 566 So.2d 395 (La.1990). Here, the appellant was convicted of armed robbery, which is defined as (1) the taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. La.R.S. 14:64. The evidence presented at trial clearly showed a man in a ski mask entered the restaurant, placed a knife at Ms. Mitchell's neck, and demanded money from the cash register. Upon receiving the money, he released Ms. Mitchell and fled. Thus, there was ample evidence an armed robbery occurred.
The appellant argues, however, the State failed to prove beyond a reasonable doubt that he was the robber. As noted above, the relator presented a combined argument on this issue and the identification suppression. However, the evidence supports the jury's verdict.
The appellant argues that although his red T-shirt matched that of the robber, this shirt was not so unique that only the robber could have worn it. However, officers testified he was the only person found in the area wearing this T-shirt, and there were very few people in the area at that time of the night. He also argues the other clothes worn by the robber, the blue jumpsuit (or warm-up pants), the ski mask, and the gloves, were never found. However, one officer testified the garbage had been picked up in the area into which the *539 robber fled between the time of the robbery and the appellant's detention. Based upon the evidence presented at trial, we find that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant did commit the armed robbery of the restaurant. This assignment has no merit.

IV.
By his final assignment of error,[5] the appellant contends he was denied the right to an effective appeal because this court refused to order the supplementation of the record with the transcript of jury charges. In support of his argument, he cites C.Cr.P. art. 843, which provides:
In felony cases ... the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
He also cites State v. Thetford, 445 So.2d 128 (La.App. 3rd Cir.1984), which held that a trial transcript which did not contain part of the testimony presented at trial rendered the defendant's right of appellate review meaningless. While noting that a "slight inaccuracy" or an "inconsequential omission" in the record might not affect the court's ability to review the defendant's claims, the court also stated: "But where a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial." Id. at 129.
Here, the appellant requested the supplementation of the record with the jury charges. There was no indication in the record that this portion of trial was not recorded. However, because the minute entry of trial did not reflect any objections made during that portion of the trial (R. 7), this request was denied. C.Cr.P. art. 841 provides in part: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." Thus, because no objections were made to the jury charges, the appellant's counsel cannot assign any error as to them for the first time on appeal. Therefore, the refusal of this court to order the production of the transcript of jury charges did not impair appeal counsel's ability to perform his duty because he would be estopped from raising any claims as to them.
In State v. Delaneuville, 545 So.2d 659 (La.App. 5th Cir.1989), writ den. 551 So.2d 1335 (La.1989), the court reporter destroyed the notes of jury selection, opening statements, closing arguments, and the jury charges after transcribing the testimony portions of trial. When the defendant sought to supplement the record with this transcript, the transcript could not be prepared. On appeal, the defendant argued that he should have been afforded a new trial because the record was so grossly incomplete as to deny him a full and fair review. The court disagreed, noting that because no objections were made during those portions of the trial, the defendant would be estopped from raising any error during these portions.
Although Delaneuville concerned the unavailability of transcripts, as opposed to the refusal of a court to order their production for an indigent appellant, it would appear the reasoning behind Delaneuville would be applicable to this case. Even if the transcript of jury charges had been produced, the appellant would not have been able to assign error as to this portion of trial. Thus, the failure to order the record supplemented with this transcript did not deny the appellant his right to a meaningful review. This assignment is without merit.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs in the result.
NOTES
[1] See also Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Savoy, 501 So.2d 819 (La.App. 4th Cir.1986), writ den. 502 So.2d 576 (1987); State v. Dawson, 490 So.2d 560 (La.App. 4th Cir.1986).
[2] An exception is Holmes, supra, where a witness to a murder identified the defendant from seeing him in court just prior to a pretrial hearing. This court upheld the identification, finding it was spontaneous (the defendant's name had not yet been called) and reliable.
[3] The defendants raised as error the trial court's restriction on cross-examination of the witness at the suppression hearing, which occurred during trial, on the five Manson criteria of reliability. However, because the transcript of trial showed these criteria had been adequately met, this court found no error in the trial court's restriction of cross-examination.
[4] See, for example, State v. Sweeney, 443 So.2d 522 (La.1983), lack of probable cause to hold on bond obligation moot after conviction; State v. Long, 408 So.2d 1221 (La.1982), improper questioning during preliminary hearing moot after conviction.
[5] Assignments four and six have been abandoned.