ARMSTRONG, Judge.
Defendant was charged by bill of information with the attempted unauthorized entry of an inhabited dwelling in violation of La.R.S. 14:27 and 14:62.3. At a motion hearing, the trial court found probable cause and denied a motion to suppress the evidence. Following a jury trial, defendant was found guilty as charged and subsequently was sentenced to serve three years at hard labor. Defendant now appeals. We affirm.
FACTS
Defendant was arrested on August 26, 1990 for attempted unauthorized entry of an inhabited dwelling. Vanessa Jeanfro witnessed the attempt. She testified that on August 26, 1990, at approximately 1:45 a.m., she looked through her window and saw a black male wearing a purplish-pink tank-top and blue jeans walk down the driveway and onto the porch of a neighbor’s house across the street, remove a window screen, and then “fool” with the window with some sort of tool. Security lights on the neighbor’s house, on another neighbor’s house and on Jeanfro’s house allowed her to see the perpetrator’s clothing. Jeanfro asked her mother to call the police while she continued to watch. Before the police arrived, the perpetrator ran across an empty lot and went out of sight to the rear of another house.
Jeanfro further testified that Sgt. Michael Rice of the New Orleans Police Department arrived and she directed him to the rear of the house where the perpetrator had run. Jeanfro stated that Sgt. Rice walked across the lot to the other house and shined his flashlight on the defendant, who was attempting to break into that house through a rear window.
Sgt. Rice testified that at approximately 1:45 a.m. on August 26, 1990, he responded to a police broadcast of a prowler dressed in blue jeans and a pink tank-top at 7050 Curran Road. As he approached that address, he heard what sounded like cracking lumber coming from another house across an empty lot next to the 7050 Curran address. He shined his flashlight in the direction of the noise and, almost simultaneously, noise emanated from his police radio, causing the perpetrator to turn in the direction of the radio and toward the officer’s flashlight. Sgt. Rice testified that, in the light of his flashlight, he saw the perpetrator standing at the rear of the house fooling with the windows, and saw the perpetrator’s face and clothing, blue jeans and a pink tank-top undershirt. The perpetrator fled.
Sgt. Rice advised the police dispatcher of the situation and gave a description of the perpetrator.[1] Two squad cars arrived shortly thereafter. Rice informed the offi *665 cers of the facts and was dispatched on another call.
Rice further testified that, a short time later, he saw the perpetrator at a bus stop at Martin and Morrison Road, a few blocks from the Curran address, still wearing the pink tank-top and blue jeans. He apprehended the suspect, handcuffed him, and radioed for backup. He also attempted to search defendant, but defendant struggled and would not allow the search to take place.[2] Officer Steven Arroyo arrived, searched the defendant and found a screwdriver in his back pocket. The two officers placed defendant in Arroyo’s vehicle. Rice then followed Arroyo to Jeanfro’s residence, where she identified defendant, handcuffed and seated in the back of the patrol car, by his clothing.
In court, Sgt. Rice positively identified defendant as the person he saw at the rear of the house near the Curran address and the person he arrested at the corner of Martin and Morrison Road.
Officer Arroyo corroborated the testimony of Rice as to the police radio broadcast of a prowler at 7050 Curran Road and insofar as he (Arroyo) was involved in apprehending defendant at Martin and Morrison Road. Arroyo identified defendant as the person from whom he had retrieved the screwdriver.
Ms. Eleanor Elder testified that she was living at 7050 Curran Road on August 26, 1990; that she did not give Kenneth Kelly permission to enter her house; and that she did not know Kenneth Kelly. She stated that she did not become aware of the incident until another neighbor called her. She further testified that one window screen had been removed from her house.
Felicia Ann Kelly, defendant’s sister, testified that defendant had very limited use of his right hand since birth. She stated that her brother at times walks from the Desire Projects to visit her home near the scene of the crime, and that he does so at all hours. She did not recall, however, whether he visited her home on the night in question.
At the end of the trial, the defendant displayed his arms to the jury and, at the request of the State, held a screwdriver in his left hand.
ERRORS PATENT
A review of the record reveals no errors patent.
ASSIGNMENTS OF ERROR
NOS. 1, 2, AND 6
By assignments 1, 2 and 6, defendant argues the evidence was insufficient to support his conviction.
When assessing the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In order to convict the defendant in the instant case, the State had to prove beyond a reasonable doubt that defendant attempted the intentional entry without authorization into an inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person. La.R.S. 14:27 and 14:62.3.
Defendant argues that he was physically incapable of the crime because he could not use his right arm. Defendant displayed his right arm to the jury and presented the testimony of his sister that he is incapable of opening a window, either locked or unlocked, due to the condition of his right arm.
The evidence that defendant is capable of the crime for which he was convicted includes the testimony of Vanessa Jeanfro, who witnessed the attempt and identified *666 defendant by his clothing within half an hour of the crime, and the testimony of Sgt. Rice, who heard the sound of cracking lumber at the time he saw defendant fooling with a window at the rear of a house next to the Curran Street address and who identified defendant both by his face and his clothing.
The question of whether defendant is capable of the crime is really a question of credibility of the witnesses. The jury clearly found the testimony of the witnesses credible. The appellate court’s function is not to assess the credibility of witnesses or to reweigh the evidence. State v. Jones, 537 So.2d 1244 (La.App. 4th Cir.1989).
Defendant further contends the evidence is insufficient to support his conviction because the conviction was based on unreliable out-of-court identifications. He argues the identifications are unreliable because they are based exclusively on similarity of clothing and because the out-of-court identification by Jeanfro was unduly suggestive. Defendant specifically complains that neither Rice nor Jeanfro gave a detailed description of the perpetrator. He argues that the fact that neither witness described the perpetrator as having a long scar on his right forearm further shows the identifications are unreliable.
Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), sets forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
Generally, one-on-one identifications are not favored, but they may be justified under certain circumstances. State v. Bickham, 404 So.2d 929 (La.1981). However, in cases where such identifications were upheld, the identifications occurred within a short time after the crime occurred and either occurred at or near the scene of the crime or occurred as an inadvertent meeting between the witness and the defendant. State v. Valentine, 570 So.2d 533 (La.App. 4th Cir.1990).
In Valentine, this Court upheld identifications by two witnesses to an armed robbery of a restaurant. The two witnesses were both working at the restaurant when it was robbed by a man wearing a ski mask, blue warm-up pants or jumpsuit, a red shirt with the word “Maze” written on it, and a mesh shirt over the red shirt. The defendant was apprehended by a trooper (based on a broadcast of the robbery and description of the perpetrator) one and a half blocks from the restaurant within thirty minutes of the crime; he was out of breath and sweaty; and he was wearing a blue jumpsuit over a red T-shirt with the word “Maze” in black letters. He was driven back to the restaurant where he was viewed by the two witnesses (separately) as he sat handcuffed in the back of the police car. One of the witnesses testified that she identified him mainly because of the red T-shirt since she had not seen his face. The other witness testified he had seen the defendant passing the restaurant just prior to the robbery, dressed in warm-up pants and a black see-through shirt worn over the red “Maze” shirt. He testified the robber’s eyes were the same as defendant’s and the robber had braids, as did defendant, which he could see under the ski mask.
In the instant case, Jeanfro testified that, while looking through her window, she saw the defendant walk up the driveway of her neighbor’s house and watched him remove the screens from one of the windows. She stated that she was able to see the perpetrator’s clothing, a purplish-pink tank-top shirt and blue jeans because of the surrounding security lights. She further stated that she watched the perpetrator for approximately five minutes before he left. The police returned fifteen to twenty minutes after the crime. Jeanfro viewed defendant as he sat in the back seat of the police car from a distance of approximately three feet and identified him by his clothing.
*667 Sgt. Rice testified that he responded to a police radio broadcast of a prowler wearing a pink tank-top and blue jeans at 7050 Curran Street. He was directed by Jeanfro to the house across the lot from that address and there he clearly saw defendant’s face in the light of his search light. He again saw the defendant approximately half an hour later at a bus stop a few blocks from the scene of the crime. He positively identified defendant as the person he saw both at the time of arrest and outside the home near the lot.
The witnesses’ testimony indicates they had ample time and light to view the perpetrator; they were both clearly focused on the perpetrator; the description of the perpetrator’s clothing was consistent and involved a somewhat uncommon shirt (purplish-pink tank top); they were both certain of the identification;[3] and less than one hour had passed from the time of the crime to the timé of the identifications. Although Jeanfro identified defendant only by his clothing, this identification was further substantiated by Rice’s identification, as was the first witness’ identification in Valentine.
The jury clearly found the testimony of the witnesses credible and the identifications reliable. The appellate court’s function is not to assess the credibility of witnesses or to reweigh the evidence. State v. Jones, supra. Further, under Valentine, the identification procedure at residence was not unduly suggestive.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found proof beyond a reasonable doubt that defendant attempted to intentionally enter the Elder home without authorization. We find no merit to these assignments of error.
ASSIGNMENTS OF ERROR NOS. 3 AND 4
By his third and fourth assignments of error, defendant contends he received ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). However, in the interest of judicial economy, the court may consider a claim of ineffective assistance if the record contains sufficient evidence to address the merits of such claim.
In order to substantiate a claim of ineffective assistance of counsel, a defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). “Such performance is ineffective when it can be shown that counsel made errors so serious that he was not functioning as the ‘counsel’ guaranteed by the Sixth Amendment.” Bell, at 969. Counsel’s deficient performance will have prejudiced the defendant if it can be shown that counsel’s error were so serious as to deprive the defendant of a fair trial. Both showings must be made in order to prove that counsel was so ineffective as to require reversal. Strickland, supra; Bell, supra; State v. Crowley, 475 So.2d 783 (La.App. 4th Cir.1985).
Defendant must make a showing that, but for the unprofessional conduct, the outcome of the proceedings would have been different. State v. Bienemy, supra.
Defendant makes the following specific complaints as to the inadequacies of counsel’s performance:
1. Counsel failed to have defendant show the jury his useless limb.
2. Counsel failed to subpoena defendant’s medical records from Charity.
*668 3. Counsel failed to ask Jeanfro whether the perpetrator was using both hands or only one and, if so, which one.
4. Counsel failed to put defendant on the stand.
5. Counsel failed to file a motion to suppress the identification by Jean-fro and failed to object to the admission of that identification into evidence.
6. Counsel failed to file a motion to suppress the evidence.
7. Counsel failed to question the police officers about whether the screwdriver might have been planted.
The record reveals that defense counsel did in fact have the defendant show his arm to the jury and that a motion to suppress the evidence was in fact filed, which motion was denied after a hearing. As to the medical records, defendant fails to show that lack of the records resulted in prejudice; the jury heard testimony regarding the handicap and was allowed to view defendant’s arm in court.
The remainder of the purported errors fall within the ambit of trial strategy, the failure of which does not establish ineffective assistance of counsel. State v. Felde, 422 So.2d 370 (La.1982), cert. den. 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4th Cir.1986).
We find no merit to these assignments of error.
For the foregoing reasons, we affirm defendant’s conviction and sentence.
AFFIRMED.

. Sgt. Rice testified that Jeanfro had followed him across the vacant lot. He believed the perpetrator had seen her; he was concerned for her safety and for that reason did not pursue the perpetrator at that time.

. Rice stated that he had the defendant handcuffed and leaning against the police car, face down. Defendant kept pulling away from the car and twisting to prevent Rice from searching him.

. Rice stated he was absolutely sure that defendant is the same person he saw at the rear of the house near the vacant lot and the same person whom he arrested a short time later. Jeanfro was not asked if she was positive of the identification. However, she consistently described defendant's clothing and her testimony does not reveal any uncertainty.