| MAMES A. GRAY, II, Judge Pro Tern.
By grand jury indictment dated February 8, 1996, the defendant was charged as follows: six counts of aggravated rape (Counts 1, 5, 6, 9,11 and 21); ten counts of aggravated crime against nature (Counts 2, 3, 4, 13-18 and 22); three counts of armed robbery (Counts 7, 8, and 12); one count of attempted armed robbery (Count 10); and three counts of aggravated kidnapping (Counts 19, 20 and 23). He pled not guilty to all counts.
On December 3-4, 1996, the defendant was tried on Counts 5-8 and found not guilty. On March 18 and 19, 1997, the defendant was tried by a twelve-member jury on Counts 9-20. He was found guilty as charged on all counts except Counts 17 and 18, for which he was found guilty of attempted crime against nature. Subsequent to the trial, the State entered a nolle prosequi as to Counts 1^1 and Counts 21-23.
On April 30, 1997, the defendant was sentenced as follows: on Counts 9 and 11, sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; on Count 10, a sentence of twenty years at hard labor without benefit of parole, probation, or suspension of sentence; on Count 12, a sentence of thirty years at hard labor without benefit of parole, probation, or suspension of sentence; on Counts 13-16, sentences of fifteen years at hard labor without benefit of parole, probation, or suspension of sentence; on Counts 17 and 18, sentences of seven years at hard labor without benefit of parole, probation, or suspension of sentence; and on Counts 19 and 20, sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The sentences on Counts 9, 10, 13, 14, 17, 18, and 19 were to be served concurrently with each other; and the sentences on | ¡>,Counts 11, 12, 15, 16 and 20 were to be served concurrently with each other, but consecutively to the others.
The defendant now appeals his conviction arguing that there was insufficient evidence to support the conviction and that the photographic lineup from which he was identified by the two victims was unduly suggestive.

FACTS

On the night of November 25, 1995, G.S. and S.M.[1] went to the French Quarter where they stayed until approximately 3:00 a.m. When they could not get a taxi to take them home to the Magnolia Housing Project, they started to walk home. As they walked past the post office, a white vehicle, described as either a Jeep or a Blazer, stopped; and, the driver asked the two *600 women if they needed a ride. After they told him that they did not, he got out of the vehicle, pointed a .38 revolver at them, and ordered them into the vehicle. G.S. sat in front, and S.M. sat in the back.
The man, whom both women later identified as the defendant, drove to the Wood-son School, where he ordered the women to remove their tops and pull their pants down to their ankles. S.M. testified that she also gave the defendant $40.00 and that he fondled her breasts. The defendant then drove to some warehouses on Tehoupitoulas Street, where he had vaginal intercourse with both women. He also performed oral sex on them and had them perform oral sex on each other. He also made G.S. perform oral sex on him. He then drove the women back to the school and let them out of the vehicle.
The women went home and called the police. They described the vehicle, and both women said that it had a Florida license plate. G.S. recalled the license number as either RLN 985 or RLN 98S. They both saw a light blue shirt in the back of the vehicle, and G.S. recalled that there was a patch on it that said “Universal.” They also both described their assailant as having cuts or slashes in his eyebrows and noted that he wore diamond stud earrings. They later met with a police sketch artist, who drew a picture of the assailant. The women also chose a skin Lcolor sample, which they admitted was lighter than defendant’s skin color.
The victims were taken to Charity Hospital for rape examinations. No semen sample could be obtained from S.M., but one was obtained from G.S. The sample contained group A secretions. Saliva testing showed that both G.S. and the defendant were group A secretors.
On December 11, 1995, the police saw a white Chevrolet Blazer parked in front of Hyster’s Barbecue on South Claiborne Avenue. The vehicle had a Florida license plate with the number RLN 87S. The police spoke with the defendant, who was employed by Universal Security and worked as a security guard at the restaurant. The Blazer belonged to the defendant’s girlfriend.
After a day of surveillance, the defendant was arrested. Eddie Gai, the officer who arrested him, admitted that the defendant did not have sculpted eyebrows when he was arrested. A search of the homes of the defendant’s mother and girlfriend turned up a light blue Universal Security shirt and a .38 caliber handgun. The interior of the Blazer was vacuumed, but no evidence was found. Fingerprints were also lifted from the vehicle, but none were deemed suitable for comparison.
On December 12, 1995, G.S. chose the defendant’s picture out of a photographic lineup. The lineup was not shown to S.M. until February 5, 1996, when she also chose the defendant’s picture. She admitted that prior to looking at the lineup, she had been told that G.S. had already picked someone out.
Virginia Johnson, manager of Hyster’s Barbecue, testified that she did not recall ever having seen the defendant with sculpted eyebrows or diamond stud earrings.

ERRORS PATENT

Our review of the record reveals no errors patent.

SUFFICIENCY OF EVIDENCE

In his first assignment of error, the defendant contends the State failed to prove his guilt beyond a reasonable doubt. He specifically argues that the State failed to present sufficient evidence to prove his identity as the assailant of G.S. and S.M. He alleges that there was a lack [4of corroborating physical evidence in the Blazer; that the semen sample could not be linked to him; that the clothes described by the victims were not found; that the license plate number was not the same; and finally, that he did not fit the victims’ initial physical description as to the eyebrows and skin coloring.
*601 The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
The defendant in the instant case does not argue that the State failed to establish any of the essential statutory elements of the offenses of which he was convicted; rather, he contends that the State faded to prove beyond a reasonable doubt his identity as the offender.
We find this argument to be without merit. Both victims were positive that the defendant was the man who abducted, robbed, and sexually assaulted them; and, both victims were extensively cross-examined about their identification of him as their assailant and about the description they gave to the police. The guilty verdict therefore indicates that the jury found the testimony of the two victims to be credible. We find no abuse of discretion in this credibility determination.

SUGGESTIVENESS OF PHOTOGRAPHIC LINEUP

In his second assignment of error, the defendant complains that the trial court erred in denying his motion to suppress the identification. He argues that the photographic lineup shown to the two victims was unduly suggestive because his picture was noticeably lighter (oveijex-posed6) than the other five pictures used in the lineup. He further argues that there was a substantial likelihood of misidentifi-cation because of the inaccuracy of the victims’ prior description of their assailant and because of the length of time between the incident and the identification. He also points to the fact that S.M. was told when she viewed the photographic lineup that G.S. had already selected a picture.
When reviewing an out-of-court identification procedure for its constitutionality and its admissibility in court, the appellate court must first make a determination of whether the police used an im-permissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Valentine, 570 So.2d 533 (La.App. 4th Cir.1990). If the court finds in the affirmative, the court must then decide, under all of the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Id. In Manson v. Brathwaite, the Supreme Court set forth a five-factor test to determine whether the identification was reli- ■ able: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
A photographic lineup may be unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. McPherson, 630 So.2d 935 (La.App. 4th Cir.1993). Strict identity of physical characteristics is not required; all that is necessary is a sufficient resemblance to reasonably test identification. *602 State v. Savoy, 501 So.2d 819 (La.App. 4th Cir.1986), writ denied 502 So.2d 576 (La.1987).
A review of the photographic lineup shown to the victims indicates that defendant’s picture is noticeably lighter than the other five photographs. All six are black and white photos. The apparent over-exposure of the selected photo is the only appreciable difference, as the defendant is otherwise similar in appearance to the other men in the lineup. Both victims were asked if they had chosen defendant’s picture because it was lighter than the others, and both women denied that they had done so. They testified that they picked defendant’s picture because they remembered his face.
| (¡Detective Ned Gonzales, the police officer who put together the photographic lineup, testified that the defendant’s picture had been obtained from the Department of Motor Vehicles and that it had a blue background. He further testified that because the other pictures had backgrounds of a different color, the photos were converted to black and white to make the lineup more fair.
Considering the circumstances, we do not find that the photographic lineup shown to the victims was unduly suggestive. The trial court did not err in denying defendant’s motion to suppress the identification.

CONCLUSION

Accordingly, for the reasons stated, we affirm the defendant’s convictions and sentences.
AFFIRMED.

. The victims names are omitted to protect their privacy.