LOMBARD, J.
Defendant/appellant Merlin Galle appeals his conviction for armed robbery, a violation of La.Rev.Stat. 14:64, and attempted armed robbery, a violation of La. Rev.Stat. 14(27):64. After review of the record in light of the applicable law and arguments of the parties[1], we affirm the defendant’s conviction but vacate his sentence'and remand for resentencing.

Relevant Facts

On June 30, 2003, the day Tropical Storm Bill passed through New Orleans, JoAnn Anear and her sister Violetta Hall-Alexander visited Ms. Hall-Alexander’s hospitalized daughter at the Bywater Hospital in the 3400 block of St. Claude Avenue in New Orleans. Shortly before 9 p.m., the two women left the hospital for a short break and crossed the street to sit on the steps of an abandoned house. Due to electrical outages caused by the storm earlier in the day, the neighborhood was dark except for the hospital (which had its own generator). While sitting on the steps, the sisters began talking to Patricia Batiste, a neighborhood resident who was outside cleaning up from the storm. Shortly thereafter, a man approached the three women and | masked whether “Peter” lived at that residence. The women indicated they did not know anyone there by that name, and after the question was repeated several times, Ms. Batiste indicated that the house was abandoned. At that point, the man raised his hand, pointed a gun at the women, and demanded their jewelry. Ms. Anear surrendered her rings. The man ordered Ms. Anear to leave with him but fled when Ms. Batiste’s son drove up in a car.
The women flagged a passing police SUV and reported the robbery, describing the perpetrator as a black male wearing black shorts, a white tee-shirt, and a black vest-like shirt over the white tee-shirt.[2] *775 Driving in the direction indicated by the victims as the perpetrator’s escape route, the officers saw a man, subsequently identified as the defendant/appellant, enter a car at the corner of St. Claude Avenue and Congress Street and followed the ear down Congress Street until it pulled over at the corner of Marais Street. The passenger door opened and the appellant started to exit. The police officers stopped and exited their vehicle, but the appellant slammed the passenger door shut and the car drove off. The officers followed, and the car eventually stopped in the 1200 block of Independence Street. The appellant exited the passenger seat, ran from the scene, and jumped the fence at a residence at 1205 Independence Street. One officer chased the appellant while the other officer detained the driver of the vehicle. The appellant jumped a fence and pointed a gun at the officer. The officer ducked, but when he looked again, he saw the appellant throw down a gun while running down a driveway. The officers eventually captured the appellant under a house at 1201 Independence. The appellant was wearing a white tee-shirt [sand a black shirt with dice on it was recovered from under the house where the appellant was captured. No jewelry was recovered from under the house or from the car in which the appellant had been riding, but a pellet gun abandoned by the appellant while the officers were chasing him was recovered.
Ms. Batiste, Ms. Hall-Alexander, and Ms. Anear were driven to the area where the appellant was captured. After being shown the appellant and the driver of the car, the victims positively identified the appellant as the man who accosted them with a gun and robbed Ms. Anear of her rings.
The appellant was charged on August 11, 2003, with one count each of aggravated assault, armed robbery, and attempted armed robbery. He was arraigned on August 14, 2003, and pleaded not guilty to all charges. A hearing was held on his motion to suppress the identifications on September 22 and November 13, 2003, and the motion was denied by the trial judge at the conclusion of the hearing. After the trial began on March 23, 2004, the State nolle prosequied the assault charge and on March 25, 2004, a twelve-person jury found the appellant guilty as charged on the remaining counts. On April 13, 2004, the appellant was sentenced to serve fifty years at hard labor on the armed robbery count and twenty-five years at hard labor on the attempted armed robbery counts, both sentences to be served without benefit of parole, probation, or suspension of sentence and to be served concurrently. The State filed a multiple bill and on June 22, 2004, the court found the appellant to be a second offender, vacated the original sentences, and imposed sentences of forty years at hard labor on the robbery count and twenty-five years at hard labor on the attempted robbery count, the sentences to be served without benefits and to run concurrently. On August 3, 2004, |4the court “corrected” the defendant’s sentences, imposing the same sentences but noting the court’s incorrect reference on June 22 to count one, which the State had dismissed.

Discussion

A Errors Patent
A review of the record for patent errors reveals that the trial court sentenced the appellant as a multiple offender on both counts. Under State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), multiple counts arising out of a single criminal act or episode cannot each be enhanced under the multiple offender statute. See also State v. Jackson, 2001-1462 (La.App. 4 Cir. 9/25/02), 828 So.2d 1161; State v. Ward, 94-0490 (La. 4 Cir. 2/29/96), 670 So.2d 562. Accordingly, because the two *776 counts arose out of the same criminal transaction, the defendant cannot be sentenced as a multiple offender on both counts. Therefore, we vacate the adjudications and sentences as a multiple offender and remand the case for resentencing on both counts, with the multiple bill adjudication and sentence to be imposed on only one count.[3]

B. Assignment of Error

By his sole assignment of error, the defendant contends the trial court erred by denying his motion to suppress the identifications made at the scene of his arrest by the three victims. Specifically, he argues that the identification procedure was tainted and the reliability of the identifications is untrustworthy.
|sIn evaluating a defendant’s claim that an identification is unreliable, a reviewing court looks at evidence adduced at both a suppression hearing and at trial, and a trial court’s determination of the admissibility of an identification is entitled to great weight and will be disturbed only if the reviewing court finds the trial court abused its discretion. State v. Lewis, 2004-0227, at 17 (La.App. 4 Cir. 9/29/04), 885 So.2d 641, 652.
The defendant bears the burden of proving that an out-of-court identification itself is suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lee, 94-2584, at 4 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, 424, writ denied, 96-0477 (La.5/10/96), 672 So.2d 919. It is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure, and, accordingly, even a suggestive out-of-court identification will be admissible if it is found reliable under the totality of circumstances. See State v. Thibodeaux, 98-1673, at 20-21 (La.9/8/99), 750 So.2d 916, 932; State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102. In accordance with Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), we consider five factors to determine the reliability of a suggestive identification: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness’ degree of attention during the viewing; (3) the accuracy of any description of the perpetrator given by the witness; (4) the level of certainty demonstrated by the witness when making the identification; and (5) the length of time between the crime and the identification. State v. Valentine, 570 So.2d 533, 536 (La.App. 4 Cir.1990). Any dispute over the veracity of the victim’s or witness’ identification will go to the weight of the evidence and not to the admissibility. State v. Daniels, 473 So.2d 873, 875 (La.App. 4 Cir.1985).
| fiHere, at the suppression hearings each victim’s testimony was similar to that she gave at trial. As at trial, each victim insisted that she was sitting in the back seat of the police car with the other two victims when she identified the appellant, who was standing outside the police car with the car’s lights shining on him. In addition, as at trial, each victim testified that she positively identified the appellant, even though he had taken off the black shirt and was wearing only the white tee- *777 shirt that he had been wearing underneath the black shirt. Each victim denied being forced, coerced, or threatened into identifying him, and asserted that no promises were made in exchange for the identification. By contrast, each officer testified both at the suppression hearing and at trial that each victim was removed from the police car and separately identified the appellant.
The appellant argues that the trial court erred by finding that the identifications were reliable. The appellant first points to the fact that the victims all testified that they were together when the identified him. He contends that because they were together, they improperly influenced each other in making the identifications, no matter which victim was the first to do so.
At the suppression hearing, the trial judge apparently believed the victims’ testimony that they jointly viewed the appellant and identified him. Under these circumstances the trial judge found that the identification procedure was suggestive but, after reviewing the testimony of each witness in light of the Manson factors, the trial judge found that the identifications were reliable and thus admissible. After reviewing the record in light of the Manson factors, we do not find that the trial judge abused his discretion or erred in denying the appellant’s motion to suppress.
17With respect to the first factor, all three witnesses had ample opportunity to view their assailant. They each testified that it was not yet dark when they saw him, and although the electricity was out in the neighborhood, they could clearly see him from the floodlights on the hospital across the street and from car lights on St. Claude Avenue. In addition, the perpetrator spoke with them for a little while before pulling the gun, repeatedly asking them if someone lived in the abandoned house in front of which Ms. Anear and Ms. Hall-Alexander were sitting.
As for the second factor, the witness’ degree of attention, and the third factor, the accuracy of the witness’ prior description of the assailant, the appellant notes that the victims obviously did not pay attention to the robber because they told the officers that the robber was wearing a black vest, while a black shirt was seized from under the house where he was apprehended. However, the officers testified that at least one of the victims stated that the robber was wearing a black shirt with dice on it. In addition, Ms. Batiste testified at trial and at the suppression hearing that the robber was wearing a black vest-like shirt over a white tee-shirt. Ms. Hall-Alexander testified the robber was wearing a dark shirt with a symbol on it. Ms. Anear testified the robber was wearing a black shirt. All three victims positively identified the black shirt with'dice on it that the officers found under the house where they apprehended the defendant.
The fourth factor is the level of certainty demonstrated by the witness. Each of the three victims testified at both the suppression hearing and at trial that she positively identified the appellant as the robber. The appellant discounts this testimony because of the fact that the victims were sitting together when they each identified the appellant. The fifth factor, the length of time between the crime and the confrontation, was less than one hour.
|sThe main thrust of the appellant’s argument is that the victims at best described the robber as wearing a black vest, while the black garment seized from under the house where the appellant was apprehended was a black shirt. However, as noted above, at least one victim described the shirt as a vest-like shirt. - In addition, all three victims identified both the shirt and the gun seized at the appellant’s arrest as those- associated with the robbery.
*778 The appellant also argues that because Ms. Hall-Alexander commented that “God fixed it” that the robber was caught so soon after the robbery, she was predisposed to believe that the man the officers were taking her to view was going to be the robber. He contends that Ms. Hall-Alexander’s belief in divine intervention led her to identify him automatically. This reasoning, however, does not explain why Ms. Anear or Ms. Batiste would also positively identify him.
Given the circumstances of this case, it appears the trial court did not err by finding that the identifications were reliable. The victims all testified that although the electricity was out at the time of the robbery, they could see the perpetrator’s face because it was not yet dark and because of the floodlights from the hospital across the street and the lights from passing cars. They all had an adequate opportunity to view the robber because he repeatedly asked them about someone living in the house in front of which they were standing before he robbed them. They all testified that the robber was wearing a black shirt, or a vest-like shirt. They all positively identified the appellant as the robber. The identifications occurred within an hour of the robbery. They also identified the shirt and gun seized in connection with the appellant’s capture.
We are, of course, deeply disturbed by the actions of the police officers in disregarding standard police procedure and keeping the victims ^together during the initial identification process and then testifying that each of the victims was taken out separately to identify the defendant. However, because the identifications appear reliable in accordance with the Manson factors, we do not find that the trial court erred in denying the motion to suppress the identifications. Moreover, the officers’ testimony at the suppression hearings indicates that they followed a trail of witnesses which led to their first sighting of the appellant. Ms. Hall-Alexander pointed down Gallier Street as the direction in which the robber fled. A woman a block down on Gallier Street pointed down North Rampart Street as the direction in which a man in black shirt had fled. A woman a block down North Rampart Street pointed out a car into which a man in a black shirt, had just entered. The officer followed the car and captured the appellant, who fled the car from the passenger side wearing the black shirt. The shirt was found under the house where the appellant was apprehended, and the officer who chased the appellant saw the appellant abandon the gun. Based upon these circumstances, there is little likelihood that the identifications, made during an admittedly suggestive procedure, were unreliable. Accordingly, we affirm the defendant’s convictions, vacate the adjudications and sentences as a multiple offender on both counts, and remand the case for resen-tencing on both counts, with the multiple bill adjudication and sentence to be imposed on -only one count.
CONVICTION AFFIRMED; SENTENCES VACATED; REMANDED.

. Pursuant to defendant/appellant's pro se request to file a supplemental brief, an order was issued on March 24, 2005, transferring the record and granting defendant/appellant the right to file a supplemental brief within 45 days (May 9, 2005). No brief or motion for extension of time has been timely filed, however.

. The police officers testified that the victims immediately described the perpetrator's clothing as a black tee-shirt with dice on it; although a black t-shirt with dice was subsequently found with the defendant and identified by each of the three women at trial as the perpetrator’s clothing, in their testimony at the motion hearing and trial the women stated that the man was wearing a black vest or vest-like shirt over a white t-shirt.

. It does not appear that the Supreme Court’s recent holding in State v. Johnson, 2003-2993 (La. 10/19/04), 884 So.2d 568, applies to this issue. In Johnson the Court overruled the strict rule of conviction/sentence sequencing set forth in State ex ret Mims v. Butler, 601 So.2d 649 (La. 1992) where the predicate convictions were entered on the same day but arose from different criminal episodes. Here, the two counts are not predicates but the actual counts being enhanced, and they arose from the same criminal episode.