550 So.2d 272 (1989)
STATE of Louisiana
v.
Mark E. AMOS & Leroy Jackson, aka Joseph Wilson.
No. KA-9027.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
*273 Harry F. Connick, Dist. Atty. and Brian T. Treacy, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendants/appellants.
Before SCHOTT, C.J., and PLOTKIN and BECKER, JJ.
BECKER, Judge.
Mark Amos and Leroy Jackson, also known as Joseph Wilson, were charged by bill of information with one count of armed robbery and two counts of attempted first degree murder. After trial by jury, defendant Mark Amos was found guilty on the armed robbery charge and not guilty on the two counts of attempted first degree murder. Defendant Leroy Jackson was found guilty of armed robbery. He was found not guilty of the first count of attempted first degree murder, but guilty of attempted manslaughter on the second count. Amos was sentenced on the armed robbery conviction to twelve years at hard labor without benefit of probation, parole or suspension of sentence with credit for time served. Jackson was sentenced to thirty-three years at hard labor, with credit for time served on the armed robbery conviction. Jackson received ten years at hard labor for the attempted manslaughter conviction. The sentences were to run concurrently. Defendant Leroy Jackson appeals his convictions and sentences relying upon eight assignments of error.
On June 8, 1985, three individuals, Leroy Jackson, Mark Amos and an unknown male, got out of a truck and entered the All American Jeans Store located on South Carrollton Avenue. The three men began stacking jeans on the floor. The employees began placing the jeans back on the wall rack and offering them assistance with their selections. Finally, one of the employees asked the three to leave which they did, only to return a couple of minutes later. Jackson and the unknown male reentered the store while Amos remained outside near the entrance. Again, they began to stack jeans on the floor. When one of the store employees tried to return the jeans to the shelf, Jackson pointed a gun at her and told her to get out of the way or he would blow her head off. The men then left the store with the jeans and drove away in the truck. The store employees immediately called the New Orleans Police Department. A broadcast was made to all police officers describing the get-away vehicle.
Officer David Dotson, after hearing the broadcast, spotted the truck near Carrollton Avenue and Jeanette Street. Dotson, following the truck, radioed in the truck's movement. Other officers joined in the chase which ensued through several uptown streets. Subsequently, Officers Gerard Kuhn and Robert Hecker parked their unmarked police vehicle across Leake Avenue to block the path of the truck driven by Jackson. The truck approached the police *274 car going sixty to sixty-five miles per hour. Anticipating a collision, Kuhn and Hecker exited their vehicle on either side. Immediately prior to the collision, the truck increased its speed and veered towards Hecker. Hecker dove out of the way and the truck collided with the police car. Jackson and the other men exited the truck and a chase ensued, after which Jackson and Amos were arrested. They were taken back to the All American Jeans Store where they were identified by store employers as the perpetrators of the armed robbery.
The defense contended at trial that Jackson and Amos went into the jeans store with a man named Big John. They were to show "Big John" the type of jeans they wanted. "Big John" and an unnamed friend of his were to steal the jeans and then sell them to Jackson and Amos. After they had shown Big John the jeans, the three of them left the store. Big John and his friend, who were both allegedly unarmed, then returned to the store and stole the jeans while Jackson and Amos waited in the truck. Big John, his friend, Jackson and Amos drove off in the truck dropping Big John's friend at a nearby Popeye's Fried Chicken Shop. The defense further argued that Big John was the driver of the truck when it collided with the police vehicle. The defense alleged that Big John, Jackson and Amos all exited the truck after the accident. They argued that Big John had simply avoided arrest.
The defendant, in his pro se brief, sought a review of the record for errors patent. A review of the record reveals that the trial court incorrectly imposed a sentence on Jackson for armed robbery without stating that the sentence was without the benefit of probation, parole or suspension of sentence. As the State has not raised this issue on appeal, this court will not amend the sentence. See State v. Fraser, 484 So.2d 122 (La.1986).
ASSIGNMENT OF ERROR NO. 1 AND ASSIGNMENT OF ERROR NO. 2PRO SE
The defense contends that the trial court erred in restricting defense counsel's cross-examination of Michelle Morris, an employee of All American Jeans who witnessed the robbery, at the hearing of the motion to suppress the identification and in subsequently denying the motion.
To suppress an identification, a defendant must prove that the identification itself is suggestive and that there was a likelihood of misidentification as a result of the identification process. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Chaney, 423 So.2d 1092 (La.1982). While one-to-one confrontation identification procedures are not favored, they are permissible under appropriate circumstances, as when a suspect is apprehended shortly after the crime, since they promote fairness "by assuring reliability and the expeditious release of innocent suspects." State v. Chapman, 410 So.2d 689, 709 (La.1981); State v. Maduell, 326 So.2d 820, 825 (La. 1976). Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
The Louisiana Supreme Court discussed the Manson decision in State v. Davis, 409 So.2d 268 (La.1982), wherein it provided five factors to be considered in determining the admissibility of such testimony:
"The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification. The court noted that the standard, after all, is that of fairness as required by the due process clause of the fourteenth amendment. In the final analysis, it must be determined whether under all the circumstances of a particular case there is a very substantial likelihood of irreparable misidentification." Davis, supra at 270.
*275 The defense argues that the trial court limited its cross-examination of Michelle Morris such that it was impossible for the court to determine if the five indicia of reliability set out in Davis were fulfilled and thus that the trial court had no basis for denying its motion. A review of the trial transcript reveals that Ms. Morris was the only person to testify at the motion to suppress hearing, which was held at a break during the trial. Ms. Morris testified on direct examination that approximately twenty to thirty minutes after the robbery occurred, the police returned to the store with Jackson and Amos in their car. While Ms. Morris remained inside the store, the officers brought Jackson and Amos outside the car one by one and asked her if either of the two was a perpetrator of the armed robbery. She readily identified both of them. She also testified that the police did not force her to make a positive identification or promise her anything if she would do so. On cross-examination, the trial court restricted the questioning to the specifics of the identification procedure. The judge disallowed any questions concerning the facts of the robbery, stating that such testimony would be heard at the trial.
While Ms. Morris's testimony at the motion hearing may not meet all five indicia of reliability needed to allow admission of the identification, her testimony at trial, along with the testimony of Mr. Rae Gab, another employee of All American Jeans, who also positively identified Jackson, clearly shows that all five criteria were met. Thus, any limitation placed upon the cross-examination of Michelle Morris at the motion hearing was harmless.
Mr. Rae Gab testified that he observed the entire robbery. In fact, he was within five to ten feet of the defendants during the entirety of the robbery and thus, had ample opportunity to see Jackson. Gab further testified that Jackson pulled a gun on him, that he positively identified Jackson during the identification procedure, and that only ten to fifteen minutes elapsed between the robbery and the identification. Michelle Morris testified that she too witnessed the entire robbery at close range. She provided a description of the perpetrators and the get-away car to the police. Further, she readily identified the defendant as the perpetrator in the one-to-one confrontation. The testimony clearly shows the reliability of the identification process used in this matter. The trial court correctly denied defendant's motion to suppress.
The assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant argues that the State failed to present sufficient evidence to prove its case beyond a reasonable doubt as to his conviction of attempted manslaughter. Specifically, the defense contends that the State failed to prove, beyond a reasonable doubt, that the defendant had the actual intent to kill Officer Hecker.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. The standard set out in R.S. 15:438 is not a separate test from Jackson, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. Jacobs, supra.
Manslaughter is defined, by statute, as
"(1) A homicide which would be murder under either Article 30 (first degree *276 murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood has actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed without any intent to cause death or great bodily harm.
(a) when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) when the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years." LSA-R.S. 14:31.
LSA-R.S. 14:27 defines attempt. It provides, in pertinent part, that
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
An essential element of attempted manslaughter is the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975); State v. Vanvorst, 505 So.2d 123 (La.App. 4th Cir.1987), writ denied, State ex rel. Vanvorst v. Donnelly, 533 So.2d 12 (La. 1988). One having the specific intent to inflict great bodily harm may lack the intent to commit murder, since he may not necessarily have the intent to kill another. Butler, supra.
Specific intent is a state of mind. It need not be proven as a fact. Such specific intent may be inferred from the circumstances of the crime and the actions of the defendant. Shapiro, supra; Vanvorst, supra.
The defendant, Leroy Jackson, had been charged with the attempted first degree murder of Officer Robert Hecker. The state argued that Jackson intended to strike and/or kill Officer Hecker with the truck. The jury rejected the attempted murder charge and found Jackson guilty of attempted manslaughter. The trial testimony reveals that Officers Hecker and Kuhn had parked their unmarked police car across Leake Street completely blocking the path of the get-away truck driven by Jackson. The defendant was speeding down the street going at least fifty-five miles per hour to escape from Officer Dotson and the other police officers who were pursuing him. There was no way Jackson could avoid hitting the unmarked police vehicle. Once Officers Hecker and Kuhn realized a collision was imminent, they left the vehicle. As Jackson approached the car, he accelerated his speed and veered to one side of the car, towards an embankment where Officer Hecker was standing. Jackson hit the police car and the embankment at the same time narrowly missing Officer Hecker.
The facts do not support a determination that Jackson had a specific intent to kill Officer Hecker. It is much more probable that Jackson was merely trying to avoid hitting the police car head on by veering towards one side. There is no evidence to suggest that he chose to veer to the side where Hecker was standing for any reason other than by chance. There is no evidence that he specifically wanted to kill Hecker. Thus, the State failed to meet its burden of proving beyond a reasonable doubt that Jackson had the specific intent to kill Officer Hecker.
Accordingly, Jackson's conviction of attempted manslaughter and the sentence imposed under this conviction is reversed.
*277 ASSIGNMENT OF ERROR NO. THREE AND PRO SE ASSIGNMENTS OF ERROR NOS. FOUR AND FIVE
The defense alleges that the trial court erred in sentencing Jackson as a multiple offender under LSA-R.S. 15:529.1 because the judge did not inform him, prior to his plea of guilty to the multiple bill, of his right to a hearing and of his right to remain silent.
In this case, at the multiple bill hearing, defense counsel informed the judge that Jackson wanted to plead guilty to the multiple bill. The judge did not inform Jackson of his right to have the State prove its case in a formal hearing or of his right to remain silent. The trial judge merely accepted defendant's guilty plea and sentenced Jackson as a multiple offender.
Under L.S.A.-R.S. 15:529.1(D),
"If, at any time either after conviction or sentence, it shall appear that a person convicted of a felony under laws of this state, or has been convicted under the laws of any other state or of the United States; or any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegations of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned about his right, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated."
Thus, before a defendant chooses to acknowledge or confirm in open court that he has been previously convicted of a felony, he must be specifically advised of his rights. These rights include his right to a "formal hearing" and to have the State prove its case. Further, the court must advise the defendant of his right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983); State v. Jones, 504 So.2d 920 (La.App. 1st Cir.1987); State v. Vincent, 439 So.2d 1124 (La.App. 4th Cir.1983), writ denied, 472 So.2d 913 (La.1983).
This court, in Vincent, supra, recognized that such a requirement that a defendant be advised of his rights by the trial court prior to accepting a guilty plea to a multiple offender bill is also properly mandated by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which provides that a guilty plea cannot be accepted without affirmatively showing in the record that the defendant made an intelligent and voluntary waiver of his constitutional rights. In Vincent, this court held that the failure of the trial court to advise the defendant of his rights necessitated vacating the sentence and remanding the case for a new hearing on the multiple bill.
Therefore, in accordance with R.S. 15: 529.1(D) and Vincent, supra, Jackson's sentence under the multiple bill is vacated and the case is remanded for a new multiple bill hearing and resentencing.
PRO SE ASSIGNMENT OF ERROR NO. FOUR
Jackson, pro se, objects to the introduction of diagrams by Officer Hecker to demonstrate how the defendant tried to hit Hecker with the get away truck. As we have previously determined to reverse the attempted manslaughter conviction, this assignment of error is moot.
Accordingly, the armed robbery convictions of both Amos and Jackson are hereby affirmed. Jackson's sentence on the armed robbery conviction is hereby vacated and this case is remanded to the trial court for *278 a new hearing on the multiple offender bill and resentencing. Defendant Jackson's attempted manslaughter conviction and sentence under this conviction are hereby reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.