hKIRBY, Judge.
On January 14, 1997, Lehman A. Han-non [1] was charged with seven counts of armed robbery, violations of La. R.S. 14:64, with four counts of attempted armed robbery, violations of La. R.S. 14:27(64), and with three counts of attempted second degree murder, violations of La. R.S. 14:27(30.1). At his arraignment on January 16 th, he pleaded not guilty. After a hearing on March 14 th, the motions to suppress the evidence, identification, and statement were denied. The defendant was tried on six counts on May 14 th. A twelve-member jury found him guilty of one count of armed robbery, three counts of attempted armed robbery, one count of attempted second degree murder, and one count of attempted manslaughter. On November 13 th the defendant withdrew his initial guilty plea on four armed robbery charges and entered pleas of guilty as charged; he was sentenced to serve five years without benefit of parole, probation, or suspension of sentence on each conviction. (The State nolle prosequied two armed robbery charges, one attempted armed robbery charge, and one attempted second degree murder charge). On November 26th the defendant was sentenced to the following:
on counts two and three, (both 14:27(64) convictions), he received a sentence of forty-nine and one-half years | ¿without benefit of parole, probation, or suspension of sentence for each of the attempted armed robbery convictions, and for count four (on a charge of 14:27(30.1) and a conviction of 14:31), he received a term of twenty years at hard labor for the manslaughter conviction; these sentences are to run concurrently with each other;
on count seven, (a 14:64 conviction), he received a fifty year term without benefit of parole, probation, or suspension of sentence for the armed robbery convic *326 tion; on count eight, (a 14:27(64) conviction), he was sentenced to forty-nine and one-half years at hard labor without benefit of parole, probation, or suspension of sentence for the attempted armed robbery conviction; and on count nine (a 14:27(30.1) conviction), he received a term of fifty years at hard labor without benefit of parole, probation, or suspension of sentence for the attempted second degree murder conviction; these sentences are to run concurrently with each other but consecutively to the sentences in counts two, three and four; the State filed a multiple bill, and the defendant admitted he had two prior convictions; the judge then vacated the sentence as to count seven and sentenced the defendant as a third felony offender; he imposed a life sentence without benefit of parole, probation, or suspension of sentence under La. R.S. 15:529.1.[2]
The defendant was tried on six counts stemming from two incidents. Janet Gibson and Jimmy Rezny testified as to the October 23,1996, incident. Ms Gibson, the thirty-one year old victim, had just picked up Jimmy Rezny from Charity Hospital about 1:10 a.m. and was returning to her home at 8012 Cohn Street when she noticed a white ear following her. Their two-month-old son was in the front passenger position in an infant-seat. Mr. Rezny was in the back seat behind Ms Gibson. She was driving a red 4 Runner Toyota. When she pulled up in front of her house, the other ear stopped so that it blocked her car. Three men|3got out of that car wearing masks; the man carrying a gun was wearing a blue bandanna over the lower part of his face. He walked to the driver’s side of the car, pointed a gun at Ms Gibson, and said, “Get out.” She asked Mr. Rezny what to do, and he told her to honk the horn. She did, and the gunman shot her. Ms Gibson turned to cover her child with her body as the gunman shot. The bullet penetrated her stomach, her lungs, her liver, and her diaphragm. The gunman and the other two men jumped back into the car and drove away. Ms Gibson was taken to Charity Hospital where she remained for three and a half weeks. After extensive surgery, Ms Gibson still suffered from stomach problems at the time of trial.
Officer James Dueos of the NOPD crime lab testified that he was called to 8012 Cohn Street on October 23 rd to process the crime scene. He found there a red Toyota station wagon; beneath it was a spent easing, and inside, a spent bullet. He photographed the scene, noting the blood on the front seat and in the console.
Alexander Curtis and Kim Waters, both students at Tulane University, testified as to the second incident which occurred on November 5 th at 4835 Pitt Street. Mr. Curtis and Ms Waters had parked just after midnight at Waters’ apartment on Pitt Street. Ms Waters had just commented that it was her birthday when they realized that a car stopped in the middle of the street next to them. Two men got out wearing masks and carrying guns. One man pointed a gun at Mr. Curtis and said, “Get out.” Both Mr. Curtis and Ms Waters got out of the car and stretched out on the ground. The men demanded money; Mr. Curtis had no money, but Ms Waters’ wallet was taken by a man wearing a blue bandanna over the lower part of his face. Ms Waters began to scream, asking the men not to shoot them on her birthday. As many as ten shots were fired, and the men jumped back into their |4car and drove away. Ms Waters was shot by the man wearing a blue bandanna. She was shot once in the chest and twice in her left leg. One bullet broke her tibia bone. Ms Waters spent less than twenty-four hours *327 at Charity Hospital before being transferred to Tulane Medical Center where she stayed about six and one-half days. At the time of trial, she was still in treatment for her leg injuries.
Officer Verna Brown, who investigated the crime on Pitt Street on November 5th, testified that when she arrived on the scene Ms Waters was still on the ground. Officer Brown observed numerous casings in the street. The officer photographed the scene.
Officer Kenneth Leary, an expert in the field of firearms identification, testified that he examined the nine millimeter cartridge case and the nine millimeter bullet recovered from the red Toyota and found that it matched four of the nine millimeter cartridge cases found at the crime scene on Pitt Street. Sometime later the officer examined a Llama nine-millimeter semiautomatic pistol and determined that it was the weapon that had fired the bullet and the cartridge case found on Cohn Street and some of the cartridge cases found on Pitt Street. Some of the casings found on Pitt Street were fired by a Smith and Wesson, Model 39, nine-millimeter semiautomatic pistol.
Officer Joseph Waguespaek also participated in the investigations. He took a statement from the defendant; the statement was also tape-recorded. The jury received a transcribed copy of the statement, and the audiotape was played in court. In that statement the defendant admitted to taking part in both incidents and wearing a blue bandanna. However, he denied carrying a gun in either incident.
Detective Herman Cade arrested the defendant. The detective testified that he first saw the defendant on November 14th during a car chase near Magnolia jsStreet and Washington Avenue. The detective saw the defendant abandon a car on Magnolia Street, and then cross the street immediately in front of a police ear. After he was apprehended, a weapon was recovered from under the police car.
The defendant makes three assignments of error and points out two errors patent. He argues (1) that the sentence is excessive, (2) that the trial court erred in using the defendant’s prior convictions to enhance his sentence, and (3) that the trial court erred in not informing the defendant of his right to remain silent before accepting his guilty plea to the multiple bill.
The defendant first argues that his life sentence is excessive. While acknowledging that the life sentence imposed for this third offender under the habitual offender law is mandatory, the defense contends that courts have found that mandatory sentences are excessive as applied to certain defendants.
Constitutional excessiveness is reviewed by appellate courts under La. Const. Art. I, § 20. A sentence that is constitutionally excessive makes no measurable contribution to acceptable goals of punishment, is the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. Courts have the power to declare a sentence excessive even if it falls within the statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court has the authority to reduce a mandatory minimum sentence provided by the multiple offender statute for a particular offense and offender if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are presumed constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. To rebut |6the presumption of constitutionality, the defendant must show by clear and convincing evidence that he is exceptional in that, because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Young, 94-1636 (La.App. 4 Cir. *328 10/26/95), 663 So.2d 525, 581, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Under the Habitual Offender Law, a defendant with more than one felony conviction is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law. Such a multiple offender is subjected to a longer sentence because he continues to break the law. “[I]t is not the role of the sentencing "court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.” State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. If the trial court finds clear and convincing evidence that justifies a reduction of the minimum enhanced sentence, it must articulate reasons why the sentence imposed (instead of the statutory minimum) is the longest sentence not constitutionally excessive. Id.
In the instant case, the trial court did not determine that the defendant had proven that the mandatory sentence was constitutionally excessive, and it imposed the statutory minimum under the Habitual Offender Statute. The defendant failed to present evidence to rebut the presumption that the statutory sentence was constitutional. There is no requirement that the trial court articulate reasons for 17imposition of the minimum sentence set out by the legislature. The trial court evidently did not consider the statutory minimum constitutionally excessive. The defendant had committed an armed robbery during which the victim was shot. Moreover, the judge knew that thedefen-dant had pleaded guilty to four additional charges of armed robbery. Furthermore, although his two prior convictions are for possession of stolen automobiles, he was in two different stolen automobiles when he committed each of the series of crimes at issue in this trial. The trial court certainly did not abuse its discretion by failing to impose a sentence below the statutory minimum. This argument has no merit.
The defendant next argues that because the defendant’s two prior convictions are not crimes of violence, the trial court erred in adjudicating him as a third offender. The defendant offers a unique reading of La. R.S. 15:529.1 which enables him to argue that only prior felony convictions for manufacture, distribution, or possession with intent to distribute a controlled dangerous substance, and/or for a crime of violence can be used to enhance a sentence. No authority on point is offered, and all cases concerning prior offenses which are not drug related or crimes of violence are ignored.
The defendant’s two prior offenses, both for possession of a stolen automobile and both in 1995, were properly used to enhance his sentence under La. R.S. 15:529.1(A)(l)(b)(ii) which provides:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
|sThe defendant’s third felony was for armed robbery which is listed as a crime of violence under R.S. 14:2(w).
There is no merit in this assignment.
The defendant next argues that the trial court erred in not informing the defendant of his right to remain silent before accepting his guilty plea to the multiple bill.
Courts in Louisiana have consistently held that a trial court must advise a defendant of his right to a hearing at which the State is required to prove the allegations *329 of the multiple bill, and of his right to remain silent.
La. R.S. 15:529.1(D) provides for the procedure at a multiple bill hearing; it states:
(l)(a) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state .... the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction.... Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true.
* * * *
(3) When the judge finds that he has been convicted of a prior felony ... or if he acknowledges ... in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence already imposed ...
Thus, before accepting a defendant’s admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a | gformal hearing and to have the State prove its case. State v. Johnson, 432 So.2d 815, 817 (La.1983); State v. Amos, 550 So.2d 272, 277 (La.App. 4th Cir.1989); State v. Vincent, 439 So.2d 1124, 1127 (La. App. 4th Cir.1983), writ denied 472 So.2d 913 (La.1985). The trial judge must also advise the defendant of his right to remain silent. State v. Johnson, 94-1170 (La.App. 4th Cir.8/23/95), 660 So.2d 942, 949, writ denied, State v. DiBartolo, 95-3044 (La.2/2/96), 666 So.2d 1105.
At the sentencing hearing, the following colloquy occurred:
MR. MEYER (DEFENSE ATTORNEY):
Mr. Hannon acknowledges he’s one and the same.
THE COURT:
Mr. Hannon, do you understand what Mr. Meyer is saying? You’re admitting to being the same man that has two prior felony convictions for possession of stolen property. Do you understand that, sir?
THE DEFENDANT:
Yes.
THE COURT:
I have to question you on that. Raise your right hand. [The defendant takes the oath], Mr. Hannon, again, Mr. Meyer has indicated to me that you’re admitting to being the same man that has two prior felony convictions. The State alleges you have a felony conviction for the charge of possession of stolen property to which you pled guilty in June of 1995 in Section “G” of Criminal Court.
The State also alleges that you’re the same man that has a charge for possession of stolen property to which you pled guilty in Section “D” of Criminal Court in March of 1995; is that correct?
' THE DEFENDANT:
I iqYes.
THE COURT:
Do you understand you do not have to admit these charges? You have the right to a hearing whereby the State must prove these charges to me. By admitting to this you give up your right to a hearing, and you give up your right to appeal this aspect of your case only. Do you understand that?
THE DEFENDANT:
Yes, sir.
THE COURT:
Do you understand that by admitting to this if I find you to be a third felon offender, the only sentence by law that I *330 must impose is that of life imprisonment with regard to Count 7 of the bill of information. Do you understand that?
THE DEFENDANT:
Yes, your Honor.
THE COURT:
Do you understand by admitting to this you give up other constitutional rights, namely, your right to confront and cross-examine those witnesses who accuse you of this, you give up your right to compulsory process or to subpoena witnesses, and you give up a privilege that you have against self-incrimination by admitting to this. Do you understand those rights?
THE DEFENDANT:
Yes.
THE COURT:
Has anybody forced you or threatened you or intimidated you in any way in order to get you to admit to this?
J^THE DEFENDANT:
No, your Honor.
THE COURT:
Has anybody promised you anything in order to get you to admit this?
THE DEFENDANT:
No, your Honor.
THE COURT:
Are you satisfied with the way that Mr. Meyer handled this aspect of your proceeding?
THE DEFENDANT:
Yes.
THE COURT:
Are you admitting to this because you are the same man that has this.previous felony conviction?
THE DEFENDANT:
Yes.
(Sentencing transcript, pp. 8-10).
The defendant cites a case where such a dialogue was deemed inadequate; with a similar dialogue, the Fifth Circuit held that the defendant admitted to the allegations of the multiple offender bill prior to being advised of his right to remain silent. State v. Hopson, 97-509 (La.App. 5th Cir. 11/25/97), 703 So.2d 767. However, we find that the trial judge did specifically advise the defendant of his right to remain silent in this dialogue prior to the defendant’s acknowledging his guilt.[3] The trial court’s carefully chosen words indicate that the defendant’s | ^admission is in progress during the dialogue. Furthermore, after the quoted dialogue, the judge said, “Let me see the certifieds on these two [prior felony convictions].” After a recess and consideration of other defendants’ sentences, the judge began sentencing Mr. Hannon by stating:
With regard to Lehman Hannon the Court, for the record, has reviewed the documents involved in this particular ease. The Court finds that based upon the documents presented and the admission of Lehman Hannon the defendant is a third felony offender ...
Thus, the trial court did not rely only on the defendant’s admission of his identity, but examined the documentation of the defendant’s prior offenses. The record indicates that thedefendant was advised that he was relinquishing his privilege against self-incrimination before the trial court found him to be a multiple offender. The trial court followed the procedure set out in La. R.S. 15:529.1(D), and there is no merit in this assignment.
*331 In arguing that there are two errors patent in the pronouncement of the sentence, the defendant first claims that the trial court did not inform him that he would receive credit for time served prior to his sentencing. Even a defendant sentenced to life imprisonment is entitled to credit for time served prior to execution of sentence. State v. McCartney, 96-58 (La App. 3rd Cir 10/9/96), 684 So.2d 416, writ denied 97-0508 (La.9/5/97), 700 So.2d 503; cert denied McCartney v. Louisiana, — U.S. -, 118 S.Ct. 573, 139 L.Ed.2d 412. Failure to credit defendant with time served is an error patent and requires an amendment of sentence. La.C.Cr.P. art. 880. A review of the |1srecord indicates that the trial court did omit advising the defendant of this credit. However, the commitment papers are part of the record, and they show that the defendant received credit for time beginning with the date of his arrest. The Department of Corrections will credit defendant from the date of his arrest. (Record, Vol.I, pp. 134,136, 138). Thus, there is no merit in this argument.
The defendant next complains that he was not informed of the three-year prescriptive period for post-conviction relief as required by La.C.Cr.P. art. 930.8. However, this article is a directive to the trial court, and provides no remedy for an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189. This argument is without merit.
In accordance with the reasons given above, the defendant’s convictions and sentences are affirmed.
AFFIRMED.

. Hannon was charged with three co-defendants; however, the cases were severed for trial.

. The defendant pleaded guilty to counts twelve, thirteen, fourteen and fifteen on November 13 th and was sentenced to five years at hard labor on each count without benefit of parole, probation, or suspension of sentence. These sentences are to run concurrently to the other sentences the defendant is serving.

. In a grammarian’s terms, when the judge says "by admitting to this” he uses the present progressive tense indicating the defendant is involved in "some activity in progress, something not finished, or something continuing.” Muriel Harris, Prentice Hall Reference Guide to Grammar and Usage sec. lc (1991). When the judge asked if the defendant has been influenced by anyone "to get you to admit to this," he is using an infinitive form of the verb, but one without person, number, or tense; in other words, a verb form not functioning as a verb or action word. The judge did not say "you admitted to the prior convictions” which is past tense and would indicate that the action is completed. The action described in this dialogue is continuing in the present.