924 So.2d 327 (2006)
STATE of Louisiana
v.
Felton WILLIAMS.
No. 05-KA-582.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 2006.
*329 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Desiree M. Valenti, Ken Dohre, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Felton Williams, appeals his conviction for possession of cocaine, following a guilty plea made pursuant to State v. Crosby.[1] For the following reasons, we affirm and further remand for correction of an error patent on the face of the record.
On October 19, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Felton Williams ("Williams"), with possession of cocaine in violation of LSA-R.S. 40:967(C). Williams was arraigned on October 20, 2004 and pled not guilty. On March 1, 2005, Williams' motion to suppress the evidence was denied.
On March 4, 2005, Williams withdrew his not guilty plea and pled guilty pursuant to State v. Crosby,[2] reserving his right to appeal the denial of his motion to suppress the evidence. On that same date, the trial court sentenced Williams to imprisonment at hard labor for two and one-half years. The State filed a multiple bill alleging Williams to be a second felony offender, to which Williams stipulated. The trial court vacated the original sentence, and sentenced Williams to imprisonment at hard labor for two and one-half years. On March 7, 2005, Williams timely filed a motion for appeal that was subsequently granted.
Deputy Chris Morris of the Jefferson Parish Sheriff's Office testified at the suppression hearing that, on October 5, 2004, at approximately 6:30 p.m., the dispatcher notified him of an anonymous call of drug activity in the 6100 block of Second Avenue, "a high drug area." When Deputy Morris responded to the call, he observed a black male, later identified as Williams, and a black female walking eastbound. According to Deputy Morris, the black male looked over his shoulder at the deputy's police unit and whispered something to the female. The female looked back and they immediately separated. The female continued walking eastbound, and Williams turned around and started walking westbound.
As Williams walked past the passenger side door of Deputy Morris' vehicle, Deputy *330 Morris observed an object protruding from Williams' back pocket; however, Williams' white T-shirt was hanging over it, so the deputy could not determine what the object was. Deputy Morris testified that the object would "kick out" and "come back" as Williams walked and that he had reasonable suspicion to believe that Williams was carrying a concealed weapon.
The deputy turned his police car around, pulled up next to Williams, and stopped so he could conduct an investigatory stop. As he ordered Williams to his car, Williams attempted to reach back toward his waistband. Deputy Morris told Williams to "keep his hands clear" and to place them on the trunk of his unit. Morris subsequently conducted a pat down search of Williams' outer clothing, at which time it became immediately apparent that the object in Williams' back pocket was a knife, approximately ten to twelve inches long. Deputy Morris removed the knife, placed Williams under arrest for carrying a concealed weapon, and conducted a search of Williams' person. As he did so, he removed from Williams' left pocket a bank envelope containing an off-white rock-like substance that was consistent with crack cocaine.
Williams admitted that he had a knife sticking out of his back pocket on the day in question and that he was wearing a shirt that day. He recalled that his shirt was not tucked in, but he did not remember whether the shirt was over the knife. He explained that he went fishing frequently and used the knife to clean fish and rabbits. He testified that he possessed the knife that day because he had been chopping rose bushes that were hanging over the fence where he played basketball. He further testified that it was not his intention to conceal the knife or to use it for criminal activity.
According to Williams, Deputy Morris called him over as he was picking up trash in his yard. When Williams walked over to see what the deputy wanted, the deputy asked him whether he had seen anybody on the corner, to which Williams responded negatively. The deputy then told Williams to "get on the car," and Williams complied. Williams testified that the deputy asked him what was sticking out of his pocket and commented that it looked like a knife. Williams further testified that the deputy "knew what it was." The deputy then told Williams to put the knife on top of the car. Williams testified that there was an envelope in his pocket but that he did not know what was in it. Williams admitted to having a conviction for manslaughter in 1989.
After hearing the testimony, the trial judge denied Williams' motion to suppress the evidence.
In his first assignment of error, Williams argues that the trial court erred in denying his motion to suppress evidence. He contends that Deputy Morris did not have reasonable suspicion to justify an investigatory stop. Williams asserts that he was not engaged in any criminal activity when he was stopped, that it was not immediately apparent to the deputy that the object in his pocket was a knife or weapon, and that the deputy did not have the authority based solely on the anonymous tip to conduct an investigatory stop.
The State responds that sufficient articulable suspicion existed for Deputy Morris to conduct the investigatory stop and safety pat down of Williams and, therefore, the seizure of evidence subsequently retrieved from Williams was proper.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. *331 If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.[3] In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant.[4] The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[5] It is well-established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity.[6] "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference.[7]
The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person.[8]
An officer's mere unparticularized suspicion or "hunch" of criminal activity is insufficient to establish reasonable grounds to stop a person.[9] Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes.[10] While an individual's mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop.[11]
In the instant case, after a review of the record, we find that Deputy Morris had reasonable suspicion to conduct an investigatory stop of Williams. Morris testified that he observed an object in Williams' rear pocket, which appeared to him to be a concealed weapon. The deputy's testimony was corroborated by Williams, who testified that the deputy knew what the object was and that the deputy said that the object appeared to be a knife even before he confiscated it. Additionally, the area was known as a "high drug area," Deputy Morris responded to an anonymous call of drug activity in that area, and Williams' and his female companion's actions of *332 walking in different directions after seeing the deputy were suspicious.
In light of the foregoing, we find that the trial court did not err in denying defendant's motion to suppress the evidence.
Williams next requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920, State v. Oliveaux,[12] and State v. Weiland,[13] regardless of whether defendant makes such a request. Our review reveals errors in this case.
The transcript indicates that the trial judge did not impose the enhanced sentence without benefit of probation or suspension of sentence as mandated by LSA-R.S. 15:529.1(G). We need not take corrective action on this error, as State v. Williams[14] and LSA-R.S. 15:301.1(A), provide that the "without benefits" provision is self-activating.[15] Because the commitment indicates, however, that the enhanced sentence was imposed without benefit of parole, probation, or suspension of sentence, we remand to the trial court with an order that the commitment be amended to delete the reference to the denial of parole eligibility.[16]
The record also reflects the trial judge did not advise Williams of his multiple offender rights prior to the time that he stipulated to the multiple bill, as required by LSA-R.S. 15:529.1, which provides that the trial court shall inform the defendant of the allegations contained in the information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 implicitly requires that the trial court advise the defendant of his right to remain silent,[17] but the record shows that the court failed to inform Williams of this right.
In State v. Francis,[18] this Court addressed a defendant's argument that both his adjudication as a multiple offender and his enhanced sentence must be vacated because the trial judge failed to advise him of his rights before accepting his admission to the allegations contained in the multiple offender bill of information and, thus, his guilty plea was not knowingly and intelligently made.
In Francis, the defense attorney told the trial judge that he had advised the defendant of his right to a hearing and that the defendant wished to waive that right and stipulate to his second felony offender status. The transcript further revealed that the terms of the guilty plea to the offender bill were discussed in court, that the trial judge specifically addressed defendant to make sure that he understood the sentence that would be imposed pursuant to the stipulation, and that the trial judge asked the defendant whether he understood the rights that were listed on the waiver of rights form, to which the defendant responded affirmatively.
*333 In addition to this colloquy, the record also contained a document entitled "WAIVER OF RIGHTSPLEA OF GUILTY MULTIPLE OFFENDERLA. R.S. 15:529.1" which was signed by the defendant, the defense attorney, and the trial judge. The defendant initialed each separate paragraph, including those that advised him of his right to remain silent and his right to a hearing, at which the State is required to prove the allegations of the multiple bill. This Court stated that, considering the exchange that took place among the parties and the waiver of rights form, the defendant was adequately advised of his rights before he admitted the allegations contained in the multiple offender bill of information and that he knowingly and intelligently waived those rights.[19]
In the instant case, after the state announced it was filing a multiple bill, the judge asked whether there was a waiver filed in response to that bill. Defense counsel stated:
Yes, Your Honor. For the record the defense has received a copy of that bill prior to its filing, the filing wasn't until subsequent to the sentencing. I've had an opportunity to review that bill of information with Mr. Williams, advised him of his rights to proceed to hearing and advised him of his rights at that hearing. Mr. Williams has indicated to me that he stipulates to the facts alleged, contained within that bill and he requests that I on his behalf waive his right to proceed to a hearing.
Although the judge did not advise Williams in court regarding his multiple offender rights, we find that the above colloquy indicates that defense counsel advised Williams of those rights. Additionally, the record contains a form entitled "Waiver of Rights  Plea of Guilty as Multiple Offender under LA R.S. 15:529.1" that lists the multiple offender rights. The form indicates that Williams was advised of each of those rights, and that he initialed he understood those rights. Further, the form was dated March 4, 2005, which was the date defendant stipulated to the multiple bill, and was signed by Williams, defense counsel, and the judge.
Considering the exchange that took place among the parties and the waiver of rights form, we find, as per Francis, supra, that Williams adequately advised of his rights before he stipulated to the multiple bill and that he knowingly and intelligently waived those rights.
Accordingly, for the foregoing reasons, defendant's conviction is affirmed, and we remand for correction of error patent on the face of the record.
AFFIRMED; REMANDED.
NOTES
[1] 338 So.2d 584 (La.1976).
[2] Id.
[3] State v. Duckett, 99-314 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
[4] LSA-C.Cr.P. art. 703(D).
[5] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[6] LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968.
[7] State v. Belton, supra, at 1198; State v. Massey, supra, at 968.
[8] State v. Massey, supra, at 968.
[9] United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207.
[10] State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
[11] State v. Barney, supra, at 1207.
[12] 312 So.2d 337 (La.1975).
[13] 556 So.2d 175 (La.App. 5 Cir.1990).
[14] 00-1725 (La.11/29/01), 800 So.2d 790, 799.
[15] State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 79, writ denied, XXXX-XXXX (La.12/13/02), 831 So.2d 983.
[16] State v. Froiland, 05-138, p. 10 (La.App. 5 Cir. 7/26/05), 910 So.2d 956.
[17] State v. Dearmas, 606 So.2d 567, 569 (La. App. 5 Cir.1992), overruled on other grounds, State v. Davis, 01-123, p. 10 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 131.
[18] 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1240, writ denied, XXXX-XXXX (La.6/25/99), 746 So.2d 597.
[19] Francis, supra.