WALTER J. ROTHSCHILD, Judge.
 

 On September 8, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, Michael R. Hart, with distribution of cocaine within 1000 feet of Williams Playlot in violation of LSA-R.S. 40:981.3. Defendant pled not guilty to this charge when he was arraigned on September 18, 2008. On February 4, 2009, the State amended the bill of information to charge defendant with distribution of cocaine in violation of LSA-R.S. 40:967(A). On this same date, defendant withdrew his plea of not guilty to the original charge and pled guilty to the amended charge. Defendant was sentenced to 15 years imprisonment with the Department of Corrections, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. This sentence was also ordered to run concurrent with any other sentence he was serving at the time.
 

 |sThe State filed a multiple bill in this matter, alleging that defendant was a second felony offender. Defendant stipulated to these allegations. His original sentence was vacated, and he was sentenced to 15 years imprisonment at hard labor without benefit of probation or suspension of sentence, to run concurrently with any other sentence he was serving at the time.
 

 On June 15, 2010, defendant filed his pro se “Motion to Vacate and Set Aside an Illegal Habitual Offender Sentence” as well as a supporting memorandum. On June 21, 2010, the district court denied defendant’s motion, finding that defendant failed to point to a claimed illegal term in his sentence. Defendant filed a notice of intent to seek writs, and the district court set a return date. Defendant sought relief in this Court by filing a writ application in case number 10-KH-637. On August 30, 2010, this Court granted defendant’s writ for the limited purpose of vacating the district court’s June 21, 2010 order and remanding the matter to allow the defendant an opportunity to seek reinstatement of his appellate rights by filing an application for post-conviction relief to seek an out-of-time appeal. Defendant filed his application on September 28, 2010, and on October 4, 2010, the district court granted defendant an out-of-time appeal. His appeal follows.
 

 
 *47
 

 DISCUSSION
 

 Because defendant pled guilty without proceeding to trial, the facts were established from the amended bill of information and the guilty plea colloquy, i.e., defendant distributed cocaine in Jefferson Parish on March 5, 2008.
 

 By this appeal, defendant argues that the trial court failed to advise him of his right to remain silent before he admitted his guilt to the prior 1997 conviction. He asserts that he responded affirmatively to the trial court’s inquiry as to whether he was a multiple offender before he was asked if he had read the multiple offender 14form and if it was explained to him by his attorney. Because of this and because of the absence of independent evidence as to defendant’s identity and the predicate offenses, defendant concludes his adjudication must be reversed and his enhanced, illegal sentence vacated.
 

 The State responds that defendant failed to raise a claim cognizable of an illegal sentence, and instead challenges the habitual offender adjudication. Further, the State contends that defendant is not entitled to relief on the merits of his claim because the trial court advised the defendant of his right to remain silent before accepting the stipulation to the multiple bill, defense counsel explained defendant’s rights to him prior to the hearing, and defendant signed and initialed a waiver of rights form, which included the multiple offender rights. The State concludes that even if the trial court erred, any such error would be harmless because the record reveals the proceeding accorded defendant fundamental fairness and due process of law.
 

 Defendant concludes that his sentence is illegal because of an error he alleges occurred when he stipulated to being a second felony offender. On review, this Court has the discretion to correct an illegal sentence at any time. LSA-C.Cr.P. art. 882. However, we find that defendant is not arguing that a term of his sentence is illegal. Instead, he argues that his sentence is illegal because he was not advised of his right to remain silent before he stipulated to his multiple offender status.
 

 In order for a defendant to be found a habitual offender, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.
 
 State v. Jones,
 
 09-788, p. 8 (La.App. 5 Cir. 4/13/10), 35 So.3d 1162, 1167. LSA-R.S. 15:529.1 D(1)(a) provides that the trial court shall inform a defendant of the allegations contained in the bill of information and of his right to be tried as to the truth thereof according to law. Implicit in this directive is the additional requirement that the defendant be advised of his constitutional right to remain silent.
 
 Jones, supra.
 
 Generally, a trial court’s failure to advise the defendant of his right to a habitual offender hearing or his right to remain silent is considered harmless error when the defendant’s habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant.
 
 Id.
 
 However, reversible error occurs when a defendant is not properly advised of his rights and admits to being a multiple offender.
 
 See State v. Babineaux,
 
 08-705, p. 11 (La.App. 5 Cir. 1/13/09), 8 So.3d 621, 627-28;
 
 State v. Bourgeois,
 
 08-211, pp. 3-5 (La.App. 5 Cir. 10/28/08), 998 So.2d 165, 166-67.
 

 In the present case, defendant stipulated to being a second felony offender. On February 4, 2009, a “Waiver of Rights— Plea of Guilty Multiple Offender — La.R.S. 15:529.1” form was executed and signed by defendant, his counsel, and the trial judge. By means of this form, defendant admitted
 
 *48
 
 to being a second felony offender, and indicated by notation and by his signature that he understood that he was waiving certain rights, including his right to deny the allegations and to have a hearing. The District Attorney’s burden of proof at such a hearing was also explained in this form. The form also provided the following: “I understand that I have a right to remain silent throughout such a hearing and not have my silence held against me.” Defendant was advised of his sentencing range and the sentence he would receive if his stipulation was accepted. By means of the form, defendant indicated that he was satisfied with his attorney and the court in their efforts to explain his rights that were being waived. He also indicated that he had not been forced, coerced, or threatened to plead guilty and that he understood all the possible legal consequences of pleading guilty. He indicated that he wished to Implead guilty and the judge signed the form, accepting his plea as knowingly, intelligently, freely, and voluntarily made. The multiple bill commitment also indicated that defendant was advised of his rights to a trial by judge or jury, of confrontation, and against self-incrimination.
 

 The February 4, 2009 transcript also contains a colloquy of defendant’s stipulation to the multiple bill. Prior to stipulating to the multiple bill, defendant pled guilty to the underlying distribution of cocaine offense after being advised of his constitutional rights, including his right to remain silent. Thereafter, the State acknowledged that a “double bill” was filed. Defense counsel stated that the multiple bill was reviewed and that it alleged a previous 1997 conviction. Defense counsel waived a reading of the multiple bill and stated that defendant would stipulate to being the same person convicted in 1997 of that charge and waive his right to a hearing. Thereafter, the trial judge asked defendant if he understood that the State was accusing him of being a multiple offender. Defendant indicated that he understood. The judge then asked defendant if he was in fact a multiple offender. Defendant responded, “Yes sir.” The judge then asked if defendant had read the multiple bill plea form and if it had been explained to him by his attorney. Defendant responded, “Yes sir.”
 

 The judge then went on to explain defendant’s right to a hearing and the State’s burden of proof at the hearing. The judge also explained the following: ‘You can remain silent at a hearing like that and not have your silence held against you, and even now you can assert a plea of not guilty to the multiple bill.” The judge asked if defendant understood he had those rights, and defendant responded affirmatively. Again, the judge asked defendant if he understood that if he pled guilty he would be waiving those rights. Defendant indicated that he understood this. The trial court then asked defendant if he understood that he was pleading [ 7guilty to a violation of LSA-R.S. 15:529.1 and was agreeing this was his second felony conviction, and defendant responded that he did. Thereafter, his stipulation was accepted by the trial judge as knowingly, intelligently, freely, and voluntarily made.
 

 Louisiana jurisprudence provides that if the record reflects that the defendant was advised of his multiple offender rights by the trial judge and/or his attorney, then the defendant intelligently waived his rights.
 
 State v. Delmore,
 
 08-313, p. 4 (La.App. 5 Cir. 9/30/08), 996 So.2d 541, 543;
 
 State v. Perrilloux,
 
 01-509, p. 9 (La.App. 5 Cir. 11/14/01), 802 So.2d 772, 777. When the defendant’s status as a multiple offender is established by his own stipulation or admission to the habitual offender bill of information without having
 
 *49
 
 been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error.
 
 State v. Reichard,
 
 04-110, pp. 10-11 (La.App. 5 Cir. 7/27/04), 880 So.2d 97, 103.
 

 As such, it does not matter if the trial judge or defendant’s attorney advised defendant of his multiple offender rights pri- or to the multiple offender stipulation. The waiver of rights form regarding the multiple bill was executed on the same date as the colloquy for the stipulation. From the context of the transcript, we find that defendant read the plea form and the form was explained to him by his counsel prior to the colloquy that is presented in the transcript. Immediately after defendant agreed he was a multiple offender, he was asked if he read the form and if the form was explained to him by his attorney. He responded affirmatively. The waiver of rights form set forth the rights defendant was waiving, including his right to remain silent.
 

 In
 
 State v. Williams,
 
 05-582, p. 7 (La.App. 5 Cir. 2/14/06), 924 So.2d 327, 332, this Court recognized on error patent review that the record reflected that the 1 strial judge failed to advise the defendant of his multiple offender rights prior to his stipulation to the multiple bill. This Court found that although the judge did not advise the defendant in court of his multiple offender rights, the colloquy indicated that defense counsel had advised the defendant of those rights and the record contained a waiver of rights form that listed the multiple offender rights, where the defendant initialed that he understood the rights. This Court also noted that the form was dated on the same date that the defendant stipulated to the multiple bill, which was signed by the defendant, his counsel, and the judge. After considering the exchange that took place among the parties and the waiver of rights form, this Court found that the defendant was adequately advised of his rights before he stipulated to the multiple bill and that he knowingly and intelligently waived those rights.
 
 Id.,
 
 05-582 at 9, 924 So.2d at 333.
 

 The instant case is distinguishable from
 
 State v. Jones,
 
 99-972 (La.App. 5 Cir. 2/29/00), 757 So.2d 110,
 
 writ denied,
 
 00-1186 (La.9/21/01), 797 So.2d 58, where this Court vacated a habitual offender adjudication and sentence after finding that the defendant was not properly advised of his right to remain silent in the habitual offender proceeding before he stipulated that he was a second felony offender. In
 
 Jones,
 
 the trial judge asked the defendant if he was a multiple offender. The record contained no discussion of the defendant’s right to remain silent. Although in
 
 Jones
 
 there was a waiver of rights form in the record, it was unclear from the record whether the form was executed before or after the defendant admitted the multiple offender allegations.
 
 Id.,
 
 99-972 at 7-8, 757 So.2d at 114. In the present case, the judge does mention the right to remain silent in the transcribed colloquy and the contents of the colloquy suggest the form was reviewed and explained to defendant before the colloquy between defendant and the judge.
 

 Further, we find that defendant was advised of his rights by the judge before completing his stipulation to the multiple bill. At the outset of the colloquy, defendant only agreed to being a multiple offender. Even after he initially indicated he was a multiple offender, the context of the record indicates that this admission was not considered a completed stipulation to the multiple bill and was not accepted at that time as the stipulation. Instead, defendant was given multiple opportunities to deny the allegations against him in the multiple bill after he was advised of his
 
 *50
 
 rights. Even the wording used by the trial judge suggests that the stipulation was ongoing or had not yet happened.
 
 See State v. Hannon,
 
 98-0957, p. 11 (La.App. 4 Cir. 5/26/99), 736 So.2d 323, 330,
 
 writ denied,
 
 99-1911 (La.12/17/99), 751 So.2d 872, where the Louisiana Fourth Circuit Court of Appeal recognized that the trial court’s carefully chosen words indicated that the defendant’s admission was in progress during the dialogue and therefore, the trial judge specifically advised the defendant of his right to remain silent in this dialogue prior to the defendant’s acknowledging his guilt.
 
 [1]
 
 “In a grammarian’s terms, when the judge says ‘by admitting to this’ he uses the present progressive tense indicating the defendant is involved in ‘some activity in progress, something not finished, or something continuing.’ ”
 
 Hannon,
 
 98-0957 at 11, 736 So.2d at 330 n. 3 (quoting Muriel Harris,
 
 Prentice Hall Reference Guide to Grammar and Usage
 
 sec. lc (1991)). In the present case, after the initial admission to being a multiple offender that defendant complains of, defendant was told he had a right to remain silent at a hearing, and “even now you can assert a plea of not guilty to the multiple bill.” The trial judge also asked defendant if he understood that “if you plead guilty you’re waiving or giving up those rights?” The judge then asked defendant if he understood that he was “pleading guilty to a violation of R.S. 15:529.1.” We find that the verbs used by the trial judge suggest an ongoing or further action, not an action that had already been completed at a time before the judge advised defendant of his multiple offender rights.
 

 An inspection of the entire habitual offender proceedings indicates that the proceedings were “fundamentally fair and afforded the defendant due process of law.”
 
 See State v. Kennon,
 
 34,455 and 34,456, p. 8 (La.App. 2 Cir. 2/28/01), 781 So.2d 734, 740 (where the Louisiana Second Circuit Court of Appeal considered the arraignment on the multiple bill to conclude the habitual offender proceedings were valid). In
 
 State v. Harris,
 
 95-0900 (La.5/19/95), 654 So.2d 680 (per curiam), on application for post-conviction relief, the court of appeal reversed the petitioner’s adjudication and sentence as a multiple offender on the grounds that the trial court failed to advise him of his rights at the habitual offender hearing before defense counsel stipulated to petitioner’s identity. The State sought review from this ruling with the Louisiana Supreme Court. The Louisiana Supreme Court reversed the court of appeal’s ruling and reinstated the petitioner’s adjudication and sentence as a habitual offender after recognizing that in the absence of any allegation or showing that the admission was involuntary, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law. The Court noted that multiple offender proceedings simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence and recognized that it had declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the
 
 Boykin
 
 colloquy which must accompany a valid guilty plea.
 
 Id.
 
 (quotation omitted). The Louisiana Third Circuit Court of Appeal determined that
 
 Harris,
 
 Inwhich involved an application for post-conviction relief, applies to cases on appeal.
 
 State v. Payne,
 
 94-1628, p. 2 (La.App. 3 Cir. 5/22/96), 677 So.2d 527, 528.
 

 
 *51
 
 Considering the foregoing jurisprudence, as well as the waiver of rights form and the exchange that took place between the trial judge and defendant, we find that defendant was adequately advised of his multiple offender rights, including his right to remain silent. Defendant’s assignment has no merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The following was discovered:
 

 The multiple bill commitment reflects that the court found defendant to be a multiple offender and sentenced him under the multiple bill statute. However, this commitment fails to reflect defendant’s specific status as a second felony offender. Since the transcript correctly states that the defendant was found to be a second felony offender, this Court hereby remands this matter with instructions to the trial court to correct the commitment to reflect that defendant was sentenced as a second felony offender.
 
 See State v. Alvarez,
 
 08-558, p. 8 (La.App. 5 Cir. 8/31/10), 47 So.3d 1018, 1023. Also, we direct the district court to make the entries in the minutes reflecting these changes and we direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced.
 
 See
 
 LSA-C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
 

 In addition, our review revealed a discrepancy between the commitment and transcript involving the original sentence. According to the transcript, the original sentence was ordered to run concurrent with any other sentence defendant was serving. However, the commitment does not reflect this. The transcript prevails. |iaWe hereby order the trial court to correct the commitment to reflect the original sentence was ordered to run concurrent.
 

 AFFIRMED; CASE REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . It is noted that the court in
 
 Hannon
 
 recognized that the trial court did not rely only on the defendant’s admission of his identity, but also examined the documentation of the defendant’s prior offenses.
 
 Hannon,
 
 98-0957 at 12, 736 So.2d at 330.