FREDERICKA HOMBERG WICKER, Judge.
|2In these two consolidated cases, Vincent Mark Castillo, makes allegations against Sheriff Greg Champagne of the St Charles Parish Sheriffs’ Office, some of his deputies, and several additional defendants, including the District Attorney of St. Charles Parish, the St. Charles Parish Correctional center and its warden, the 29th Judicial Court, the Clerk of the 29th Judicial Court, the Parish of St. Charles, Judge Emile St. Pierre, plaintiffs defense attorney, the United States Postal Service, and an unnamed mail carrier. For reasons that follow, we affirm the judgment of the trial court.
The first petition was filed on August 26, 2003 in the 29th Judicial District Court as a petition for damages. The petition seeks $150,000.00 in damages and alleges that Sheriff Champagne and his officers “continually harassed and annoyed Vincent Mark Castillo, causing anxiety, mental anguish, & damages.”
|sMr. Castillo filed a petition for damages in federal court pursuant to 28 U.S.C. § 1367(c)(3), making essentially the same claims. In that petition, plaintiff sought $10,000,000.00 in damages. The federal claims were dismissed with prejudice and the state claims were dismissed without prejudice by the federal court. Mr. Castillo brought these state claims in a petition filed in state court on September 13, 2004.
The two matters were consolidated on February 3, 2005. Because one of the judges of the 29th Judicial District Court is a defendant in the suit and the remainder of the judges recused themselves, the Supreme Court appointed an ad hoc judge to hear the matter.
In due course, through various exceptions, defense counsel, the District Attorney of St. Charles Parish, Judge Emile St. Pierre, the 29th Judicial District Court, and the Clerk of the 29th Judicial District Court were dismissed from the lawsuit with prejudice. An exception of no cause of action filed on behalf of the Sheriff and his deputies, and the warden of the St. Charles Parish Correctional Center was denied, and the matter went to a trial on the merits of the claims against these remaining defendants.
The court conducted a two day trial on the merits and rendered judgment in favor of all defendants, dismissing plaintiffs case with prejudice. The trial judge gave extensive written reasons for judgment and findings of fact which are contained in the record.
In making his decision to rule against Mr. Castillo, the trial judge made the following findings of fact;
*1261 On August 12, 2002, Sgt. Mike Folse, St. Charles Parish Deputy Sheriff, arrested Plaintiff on four attachments of arrest. The attachments resulted from Plaintiffs failure to attend court for trial on June 27, 1996. Plaintiff had been charged with four traffic offenses, namely, (1) Driving Under Suspension, (2) No Motor Vehicle | ¿Inspection Sticker, (3) Failure to Transfer Registration, and (4) Switch License Plates. Plaintiff was arrested on these attachments and was transported to the St. Charles Parish Correctional Facility. He remained in jail until August 19, 2005; on that date he went to court and was found guilty of contempt on the attachments and was sentenced to 15 days in jail, credit for time served. His trial was reset for September 9, 2002. On that date, the original charges were nolle prossed because the state’s witness failed to appear.
The above findings of fact are consistent with plaintiffs petition and testimony, and the documentation in the record. It appears to this Court, from plaintiffs handwritten petition and his subsequent testimony at trial, that the matter began when plaintiff was stopped by officers for traffic violations in 1995. He was given four citations for driving without a license, no brake tag, switched plate and failure to register his vehicle. Mr. Castillo also stated that he has not had a valid driver’s license since 1990 when it was “suspended for some reason.” He was released on a pre-set bond of $650.00, but did not attend the trial on the traffic violations.
Mr. Castillo stated that he turned himself in to a Jefferson Parish Sheriffs Deputy in 1996 after he discovered there was an attachment out for his arrest as a result of his failure to attend trial on the outstanding citations. Documents contained in the record show that Mr. Castillo was represented by counsel and was arraigned and plead not guilty on March 20, 1996. The matter was set for trial on June 27, 1996. Mr. Castillo did not appear for trial and an attachment was issued on that date. Mr. Castillo admits he knew of the court date, but informed deputies of his intention not to attend when he was released in March. Mr. Castillo maintains it was not necessary for him to appear at trial because the traffic stop was illegal.
In August of 2002, plaintiff was stopped in the parking lot of a truck stop when he was walking around in his underwear opening a vehicle. Officers asked | ¡¿for ID, and discovered the outstanding 1996 attachment through a computer check. At that point Mr. Castillo was arrested on the 1996 attachments resulting from his failure to appear at his original traffic trial. He appeared before the trial court on August 19, 2002, at which time Judge St. Pierre told Mr. Castillo to “plead guilty and we’ll give you credit for time served, you go home today. Otherwise you’re gonna sit in here until your trial.” Mr. Castillo did not plead guilty. The court found him in contempt of court for his failure to appear for his original 1996 traffic trial, and sentenced him to fifteen days in parish prison. Bond was set at $1,000.00 on the original traffic violations, and he was given notice of a trial date of September 9, 2003.
Mr. Castillo alleges that on August 19, 2002 he was “falsely” arrested. Plaintiff asserts that he chose to remain incarcerated until his trial, refusing to “plea or sign out.” He testified at trial that he wished to make a “point” by remaining incarcerated. The record shows that by September 9, 2002, the original traffic charges were dismissed and the court amended his origi *1262 nal contempt sentence to suspend the balance. At this point Mr. Castillo was free to leave the correctional center, but refused to do so. As a result, Mr. Castillo was forcibly removed by sheriffs deputies who drove him to Kenner.
Plaintiffs petitions detail his refusal to eat, a hospital stay, his return, by “undetermined parties of the St. Charles Correctional Center,” to a parking lot on West Esplanade and Loyola Avenue in Kenner, Louisiana, presumably after his refusal to leave the correctional center after his 2002 release. The petition lists various actions by officers and prison officials including, “refusal to give Castillo his religious diet tray,” giving him “cake for his whole meal, if anything at all,” placing him in isolation for no reason, and taking away his bible, legal papers, toothbrush, and other personal items while in isolation.
|fiMr. Castillo also alleges in his petition that the “legal mail lady” at the prison refused to send out correspondence relating to his claim stating, “Mr. Castillo, if you want the United States District Court to take you seriously, I suggest you use a real envelope to send them your letter.” Mr. Castillo also makes a claim against the United States Postal Service. He alleges that, “while waiting for a ride” he gave the postal carrier a change of address card that was not honored.
Another of Mr. Castillo’s claims relates to the loss of a right to file an action for an unrelated incident that occurred in Claiborne Parish when he was incarcerated for attempted extortion. Mr. Castillo maintains that while he was incarcerated in St. Charles Parish in 2002, officials refused to give him stamps; therefore, his cause of action against officials in Claiborne Parish prescribed. The specifics of the claim that Mr. Castillo lost cannot be determined from either his petition or his testimony. However, it appears to relate to some mistreatment during his incarceration.
Mr. Castillo also testified that he was pulled over in June of 2002 by St. Charles Sheriffs deputies because “somebody called in your license plate.” His vehicle was searched, but nothing was taken. This was apparently unrelated to the incarceration of 2002 that forms the basis of his complaint.
Mr. Castillo stated that while he was incarcerated in August, 2002, he was on a religious diet consisting of vegetarian food. However, on several occasions he was served meat as well as vegetables. On at least one occasion, his meal consisted only of cake.
In support of another of his claims, Mr. Castillo stated that he put in a change of address with the post office and requested the warden forward his mail when he was released from prison, but the warden refused. Mr. Castillo stated that because his mail was not forwarded he did not receive certain legal mail from the |7federal court causing the dismissal of various defendants in the federal suit he had filed. Mr. Castillo also stated that several parcels sent to him at the jail were held four or five days before delivery. Further, a necessary pleading he attempted to mail to the federal court did not go out because the “mail lady” in the prison did not want to send it out without an envelope. Mr. Castillo explained that he did not have an envelope, so he folded a piece of paper over, addressed and stamped it.
Mr. Castillo stated that he was pulled off the yard and placed in isolation on August 28, 2002 until his release on September 8, 2002. Mr. Castillo asserts that there was no reason for the isolation and no hearing.
*1263 No proof was presented at trial to support any of these claims.
Deputy Mike Folse, one of the defendants and a traffic officer in St. Charles Parish testified that on December 3, 1995 he issued several citations to Mr. Castillo, including driving under suspension, failure to transfer registration, switched license plate, and no Motor Vehicle Inspection tag. Attachments were issued in relation to those tickets a few months later.
In August of 2002, Deputy Folse was patrolling near the River Bend Truck Stop on U.S. Highway 61. The deputy explained he had been receiving some complaints from the truck stop about some thefts in the area. Deputy Folse saw Mr. Castillo walking around in what appeared to be boxer shorts and no shirt. He was near a vehicle and when he saw the deputy, Mr. Castillo closed the vehicle door. Deputy Folse walked up to Mr. Castillo and asked for identification, which Mr. Castillo provided. A computer check revealed the outstanding attachments, so Mr. Castillo was arrested. After Deputy Folse established that Mr. Castillo was not taking or concealing any contraband, he secured the vehicle and took Mr. Castillo to the correctional center.
| ^Deputy Folse detailed one other incident that involved Mr. Castillo that occurred before the 1995 incident. A complaint was made to police officials from citizens who reported that a stranger had parked a vehicle on the River Road and engaged some of the neighborhood children in a game of football. Deputy Folse was dispatched to investigate. When Deputy Folse discovered Mr. Castillo did not have a valid driver’s license, he could not allow Mr. Castillo to drive his vehicle. This is apparently the basis for the allegation in Mr. Castillo’s petition that his vehicle was illegally towed.
The court also heard testimony from Roland Ladreyt, the warden of the St. Charles Parish Correctional Facility during Mr. Castillo’s incarceration in 2002. Warden Ladreyt explained the procedures in place for handling inmates’ grievances. In connection with his testimony, documents were introduced chronicling Mr. Castillo’s written grievances and the responses and reactions to them. Those documents show that Mr. Castillo’s complaints were numerous and included being allowed to shave only twice a week, not being able to go into the yard despite “perfect” weather, physical abuse and sexual harassment. Many of the complaints related to food, such as finding a hair in one meal, being poisoned in another, and several regarding the service of pork and other food not included in his “pork-free vegetarian” religious based diet. Mr. Castillo also objected to the labeling of food trays by inmate name, for fear that the food would be poisoned or otherwise desecrated by deputies or other inmates. Other grievances relate to Mr. Castillo’s insistence that he be allowed to retrieve stamps from his personal belongings, although the inventory of items taken from Mr. Castillo at the time of his incarceration did not include stamps.
The answers to these complaints show that Mr. Castillo was informed on several occasions how to request an indigent package including stamps from the 19commissary, how to seek library privileges, and how to be approved for a special religious diet.
Documents also establish that Mr. Castillo requested that deputies escort him to his van so that he could retrieve legal files, mail and other personal documents. Answers to these grievances show that Mr. Castillo was allowed to go through his *1264 personal items, although he removed nothing. Further, he was informed that he should enlist the help of family and friends to obtain his legal documents and mail from his van.
The trial court heard testimony from seven other witnesses who refuted Mr. Castillo’s testimony and allegations. These witnesses further corroborated the testimony of Warden Ladreyt and the documentation produced by the defendants.
After hearing the testimony and considering the documentary evidence the trial court found in favor of defendants and dismissed plaintiffs action with prejudice. For reasons that follow, we affirm.
Initially we note that plaintiff concedes that any action for damages arising before 2002 is prescribed and not at issue in this appeal. Plaintiff explained at trial that he testified to the events of that prior period because he considered that testimony essential to the understanding of his claim for damages relating to his 2002 arrest.
On appeal Mr. Castillo presents fifteen assignments for our review. The first four assignments relate to actions of the United States Postal Service and concern issues of the forwarding and delivery of mail. The United States Postal Service is not a party to this action. Further, these are federal claims which were dismissed with prejudice in the federal law suit and are not before this court.
In another assignment plaintiff asserts that, since the criminal charges against him were dismissed, he is entitled to an “appearance fee” for all court ^^appearances. Plaintiff cites no law to support this claim and this Court is unaware of any statute or legal concept that would support plaintiffs claim. Further, there is no indication in the record that Mr. Castillo appeared in court on the day the traffic charges were dismissed.
In four assignments, plaintiff questions the credibility of law enforcement officers in general and Officer Mike Folse in particular. Credibility determinations are within the purview of the finder of fact. A reviewing court does not assess the credibility of witnesses or reweigh the evidence. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Gordon, 06-8 (La.App. 5 Cir. 3/30/06) 928 So.2d 689, 694. It is clear that the trial court found the testimony of Officer Folse, supported by documentation more credible than that of Mr. Castillo.
In one of his assignments, Mr. Castillo asserts there was no reasonable suspicion or probable cause for Officer Folse to confront him in the parking lot of the truck stop. We disagree. Officer Folse, while on a routine patrol, witnessed Mr. Castillo in his boxer shorts and no shirt loitering around a vehicle in the truck stop. The officer testified that thefts of vehicles at the truck stop had been a problem and the owners requested officers to patrol the area.
It is well-established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. “Reasonable suspicion” is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. State v. Williams, 05-582 (La.App. 5 Cir. 2/14/06), 924 So.2d 327, 331. Here the *1265 officer made a valid h investigatory stop. Upon finding that Mr. Castillo had outstanding attachments, the officer was justified in arresting Mr. Castillo.
It appears from the argument on this assignment that it also relates to the initial stop in 1995 that resulted in the four traffic violations. As we have noted before, the parties have agreed that matter has prescribed and is not before this Court. Mr. Castillo’s assignment shows his confusion over the subject matter of his trial and this appeal. Mr. Castillo was charged with contempt of court for failing to appear after receiving the four citations. The proper time and vehicle to assert defenses to those 1995 citations was at the trial date set in those cases in 1996, and with the arguments presented herein. Rather than present his defenses to the court at that time, Mr. Castillo chose to ignore the trial date. His attachments were for contempt of court by failing to appear, not for the traffic violations. Thus, any argument regarding the validity of the original stop is of no relevance to this Court.
In an omnibus assignment, Mr. Castillo asserts his claims were substantiated and should not have been dismissed by the trial court either before or after the trial. We disagree. The claims made by Mr. Castillo were unsubstantiated. The only proof offered to the court was Mr. Castillo’s self-serving testimony.
Included in this assignment is the allegation that “A. Ramierez” conducted an unlawful search and seizure. It is our understanding that this relates to the traffic stop which occurred in June of 2002, and is unrelated to the subsequent arrest for contempt in August of 2002. As acknowledged by Mr. Castillo at trial, any action on that incident is now prescribed. Further, we note that Mr. Castillo does not allege that there was any seizure as a part of that traffic stop.
Mr. Castillo also asserts the claim for his placement in isolation without a hearing was erroneously dismissed. We disagree. Records produced by the _[i2Correetional center prove otherwise. Testimony and documentary proof offered by defendants disputes Mr. Castillo’s testimony and the well written reasons for judgment filed in the record by the trial judge are supported by the record.
Two of Mr. Castillo’s assignments of error relate to procedural matters. In one assignment, Mr. Castillo argues he should have been granted a continuance of the trial. The record shows that Mr. Castillo made an oral request for continuance on the morning of the trial. His reasons were that, although he knew of the court date, he believed the proceeding to be a status conference and did not understand that the trial would be held. The trial judge denied the request explaining that the parties had a status conference previously, and that he specifically recalled informing Mr. Castillo that the next court date was the trial date.
In further support of his position, Mr. Castillo argues that a hearing should have been conducted to “ascertain the identity of Ray Peters prior to trial.” the relevance of Mr. Peters is not clear from Mr. Castillo’s arguments to this Court. Further, there is no indication in the record that Mr. Castillo moved for a hearing on the matter.
La. C.Cr.P. art. 712 provides that;
A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.
*1266 The decision to grant or deny a continuance lies within the wide discretion of the trial court. State v. Martin, 93-2085 (La.10/17/94), 645 So.2d 190, 197; cert. den. 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). Given the circumstances, we find no abuse of the trial court’s discretion in denying plaintiffs motion for continuance.
The final matter for our consideration is Mr. Castillo’s assertion that he was denied a trial by jury. Both petitions filed by Mr. Castillo contain requests for a 113jury trial. Because he was granted pauper status, no bond was posted. Further, Mr. Castillo did not file a motion to set the matter for trial. On the day of trial, Mr. Castillo again requested a jury. The trial court denied the request, finding that the demand made did not meet the jurisdictional amount required for a jury. It appears that the trial court believed that Mr. Castillo was not in good faith when he represented the amount of damages sustained.
In Riddle v. Bickford, 2000-2408 (La.5/15/01), 785 So.2d 795, the Louisiana Supreme Court explained;
Unlike the criminal context, there is no United States or Louisiana constitutional right to trial by jury in a civil case in Louisiana courts. The right to jury trials in civil cases is not so fundamental to the American system of justice as to be required of state courts by the due process clause of the fourteenth amendment. There is also no constitutional corollary regarding the right to full voir dire examination and peremptory challenges in civil cases. In Louisiana courts, the right to a jury trial in a civil case is provided for by statute, namely La. C.C.P. arts. 1731 through 1814. La. C.C.P. art. 1731(A) provides that “[e]x-cept as limited by Article 1732, the right of trial by jury is recognized.”
(citations omitted)
Id. 785 So.2d at 799
Under any circumstances, it is plaintiffs good faith actions that determine either party’s right to a trial by jury. La. C.C.P. art 4; Rico v. Vangundy, 461 So.2d 458, 461 (La.App. 5 Cir.,1984)
We note that the total amount demanded in damages in the two petitions filed was $10,150,000.00, and the exact specifics of his damages suffered as a result of his claims were not alleged. We believe another factor in the trial court’s decision is the fact that many of the defendants and claims were disposed of before the trial, leaving only the defendants related to the 2002 arrest and incarceration claims.
In his petition Mr. Castillo alleges he was arrested in 2002 “for traffic attachments” from a December 3, 1995 arrest. He further stated that he refused to 114enter a plea or “sign out,” and demanded his “right to remain incarcerated until his trial.” Mr. Castillo further stated in his petition that he chose to remain in the correctional center. It is clear on the face of Mr. Castillo’s petition that he had the option of securing a release from the correctional center, but remained incarcerated by choice. Given the circumstances of this case, we cannot find error in the trial judge’s decision to deny the jury request.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.